

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-1994

# Polselli v. Nationwide Mutual Fire Insurance

Precedential or Non-Precedential:

Docket 93-1499

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Polselli v. Nationwide Mutual Fire Insurance" (1994). *1994 Decisions.* Paper 10.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/10

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

NO.  93-1499
_____


REGINA POLSELLI;
RUDOLPH T. POLSELLI,
                    Plaintiff-Intervenor

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
                    Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 91-01365
_____

Argued March 10, 1994
Before:  GREENBERG, ROTH, and ROSENN, <u>Circuit Judges</u>
Opinion Filed May 10, l994
_____

R. BRUCE MORRISON, ESQUIRE (Argued)
Marshall, Dennehey, Warner, Coleman and Goggin
1845 Walnut Street
Philadelphia, PA  19103
  Attorney for Appellant

HARRY P. BEGIER, JR., ESQUIRE (Argued)
Harry P. Begier, Jr., Ltd.
1735 Market Street, 30th Floor
Philadelphia, PA  19103-7592
  Attorney for Appellee
_____


OPINION OF THE COURT

ROSENN, <u>Circuit Judge</u>.

Regina Polselli brought a diversity action in the United States District Court for the Eastern District of Pennsylvania alleging, inter alia, bad faith on the part of the insurer, Nationwide Mutual Fire Insurance Company (Nationwide), in its handling of her fire loss claim. Following a bench trial, the district court concluded that Nationwide did act in bad faith and awarded Polselli $90,000 in punitive damages pursuant to Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371 (Supp. 1993).[1] Nationwide filed a motion for reconsideration, which the district court denied. Nationwide appeals. We reverse.

I.

On January 1, 1991, a fire occurred at the Polselli home causing considerable damage. Regina's husband Rudolph was the sole titled owner of the premises and the sole named insured on a homeowner's insurance policy entered into with Nationwide. Under the policy, Nationwide had the responsibility to reimburse the insured for damage to the building (Building claim), its contents (Contents claim), along with additional living expenses (ALE claim). Rudolph moved out of the Polselli home in April 1988 and currently resides in Florida. In May 1988 he filed a divorce action, described as bitter, which was still pending at the time of the fire. When the fire happened, Regina, along with

---

[1] The insured lived in Pennsylvania where the damages to her property and the negotiations occurred. The district court and the parties applied substantive Pennsylvania law, as do we.

2

her daughter, solely occupied the Polselli property. The fire forced them to vacate the home.

Immediately upon being notified of the fire, Nationwide assigned Joseph DiDonato to handle the adjustment for it. DiDonato's supervisor instructed him to deal only with Rudolph. Regina retained Steven H. Smith as her public adjuster to prepare and adjust her claims. In the aftermath of the fire, considerable confusion reigned among the parties as to their rights and responsibilities due to the title ownership of the premises, the pending divorce action between Regina and Rudolph, the mutual distrust and dislike between Regina and Rudolph and questions of Regina's insurable interest and right to possession of the property.

On January 3, 1991, Smith sent DiDonato a letter which set forth the basis for Regina's insurable interest and requested immediate funds to alleviate Regina's desperate living conditions and to satisfy Regina's claim. On January 14, 1991, DiDonato replied that Nationwide was still in the process of investigating. DiDonato also wrote to Rudolph and his attorney asking for information necessary for the investigation, and for permission to enter the premises. In the meantime, Harry P. Begier, Jr., Regina's attorney, wrote three letters to Nationwide in January 1991, requesting that it proceed to process and adjust Regina's ALE claim.

On January 28, 1991, Smith filed a proof of loss of $120,642 for the Building claim, $64,385 for the Contents claim, and $960 per month to rent an unfurnished home, to which Regina

3

later admitted that she had no intention of moving, for the ALE claim. Smith later revised the ALE claim to $1,666.66 monthly, based on the rental of an apartment on the New Jersey shore. Rudolph also asserted claims for the building and a portion of the contents. In response to the letters sent and claims made in behalf of Regina, DiDonato reiterated Nationwide's position that no funds would be forthcoming until it completed inspecting, investigating and evaluating the loss. After entering the Polselli home on February 7, 1991, and discovering evidence suggesting that the fire had been deliberately set, DiDonato, on February 11, requested a cause and origin investigation by an outside investigator. Although the Fire Marshall had previously opined, on the day of the fire, that the fire was accidental, Nationwide's policy is not to talk to the Fire Marshal until its own investigation is complete.

Begier claims that on February 8, John R. Riddell, Nationwide's attorney, orally agreed to adjust Regina's ALE claim without further delay. Begier telecopied a letter to Riddell confirming this information. On February 13, Nationwide engaged INS Investigations Bureau, Inc. to investigate the cause and origin of the fire. After making a number of additional requests for an advance payment on her ALE and Contents claims, Regina filed suit against Nationwide on March 4, 61 days after the fire, alleging, among other things, bad faith in Nationwide's handling of her claims. Two days after the suit was filed, Begier wrote to Riddell to confirm their agreement that Riddell would meet with Smith on the following week to review Regina's Contents

4

claim, and that the ALE claim would be adjusted promptly so that it could be paid the following week.

On March 12, 1991, Nationwide received a written report that determined that the origin of the fire was accidental. DiDonato testified that the ALE claim could have been paid immediately upon receipt of the fire report. He did not know why an advance payment was not made until July 17, 1991. He testified, however, that once Regina filed suit, he transferred the file to the insurer's attorney and no longer had control over the adjustment of the claim. Begier notified Riddell on March 12, that the deposition of Regina scheduled for March 15, 1991 would be cancelled if an advance payment on the ALE claim was not made as promised. No payment was made and the deposition was cancelled.

On April 16, after a month of inaction, Riddell advised Begier of Nationwide's offer to settle the ALE claim for $11,130. On the same day, Riddell also advised Begier that Rudolph had made an oral claim on the contents of the home, and that Nationwide intended to interplead the Contents claim. In light of Begier's contention that Nationwide reneged on an earlier promise to make a payment on the ALE claim, he requested confirmation in writing of Nationwide's offer. On May 9, Begier, not having received confirmation from Nationwide, requested that settlement of Regina's claim be expedited and that an advance payment be made. Riddell expressed surprise at Begier's letter, inasmuch as Nationwide was awaiting a reply on its $11,130 offer made to Begier for the ALE claim.

5

On March 16, Begier rejected the offer and notified Nationwide that due to a judgment lien in excess of $600,000 on the property, Regina was no longer interested in rebuilding the Polselli home. On May 17, and 23, 1991, Begier advised Riddell that Regina would be evicted from her temporary housing, unless Nationwide made an advance payment. In light of Begier's disclosure that Regina would not rebuild her house, and in accordance with its policy that an insured who permanently relocates is entitled to less money, Nationwide advised Begier on May 23, that it was revising its offer to $5,000 in settlement of the ALE claim. On March 31, Begier requested information relating to the basis of the settlement offer. Riddell responded with the information almost three weeks later. On June 24, without accepting the offer, Begier asked for $3,880 as an advance on the ALE claim pending settlement. Nationwide agreed and made the payment on July 17, 1991.

Regina was deposed on August 28, and September 5, 1991. DiDonato testified that he could not accurately evaluate Regina's Contents claim because, at the deposition, Regina could not identify most of the damaged items or give additional information concerning their date of purchase and price. On September 12, Begier notified Riddell that Regina was evicted from her temporary housing for non-payment of rent. Nationwide promptly made arrangements, at its expense, for Regina to stay at an apartment complex. Prior to these arrangements, Regina stayed at five different places because she did not have the funds to rent suitable housing. On October 24, 1991, Nationwide issued a check

for $7,250 to pay for the ALE claim.  The parties eventually settled all claims before trial except for Regina's bad faith claim against Nationwide.

The district court found that Nationwide acted in bad faith in its handling of the ALE and Contents claim.  The court awarded Regina $75,000 and $15,000, respectively, in punitive damages.  Damages for bad faith were not awarded on the Building claim as Regina had no claim on the building.  The court found that Nationwide knew that Regina had an insurable interest with respect to the ALE claim, and that after the fire was labelled accidental it had absolutely no reason or justification for not making timely payments on the claim, especially in view of Regina's virtually destitute condition.  The court also found that, considering that it was clear that Regina was virtually destitute and had a substantial Contents claim, Nationwide should have proceeded with more dispatch in evaluating and settling the claim, from the date the fire was labelled accidental.

## II.

On appeal, Nationwide's primary contention is that the district court erred in determining that bad faith need only be proven by a preponderance of the evidence rather than by clear and convincing evidence.  Additionally, Nationwide asserts that the court erroneously defined bad faith too broadly.  Finally, it argues that the district court's factual findings are clearly erroneous.

Whether the trial court applied the proper standard is a question of law subject to plenary review.  See

<u>Tudor Dev. Group v. United States Fidelity & Guar. Co.</u>, 968 F.2d 357, 359 (3d Cir. 1992). Because Nationwide contends that the court failed to apply the proper standards with respect to the burden of proof for bad faith and the legal construction of the phrase bad faith, our review is plenary. The district court's findings of fact are reviewed under a clearly erroneous standard. <u>Ezold v. Wolf, Block, Schorr and Solis-Cohen</u>, 983 F.2d 509, 525 (3d Cir. 1992), <u>cert. denied</u>, 114 S. Ct. 88 (1993). Alleged errors in applying the law to the facts, however, are subject to plenary review. <u>Id.</u>

In <u>D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company</u>, 431 A.2d 966 (Pa. 1981), The Supreme Court of Pennsylvania held that there is no common law remedy under Pennsylvania law for bad faith on the part of insurers. In response, the Pennsylvania legislature enacted 42 Pa.C.S.A. §8371 which creates a statutory remedy for bad faith conduct. The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney's fees against the insurer.

42 Pa.C.S.A. § 8371.

8

In determining whether bad faith existed, the district court held, contrary to Nationwide's assertion, that the clear and convincing standard is not applicable. It noted that the clear and convincing standard would not apply in every instance where punitive damages are imposed, but only in specific types of cases, such as defamation actions. The district court correctly held that, generally, under Pennsylvania law, punitive damages may be imposed even without demonstrating with clear and convincing evidence that the claim is met. See Martin v. Johns-Manville Corp., 494 A.2d 1088, 1098 (Pa. 1985) (holding that preponderance of the evidence sufficient to support punitive damages claim). In the context of bad faith, however, the court erred in proclaiming that a heightened standard is unnecessary.

In the seminal decision of Cowden v. Aetna Casualty and Surety Co., 134 A.2d 223, 229 (Pa. 1957), the Supreme Court of Pennsylvania pronounced that, under Pennsylvania law, bad faith on the part of an insurer must be proven by clear and convincing evidence. See also Hall v. Brown, 526 A. 2d 413, 416 (Pa. Super. 1987). We too have reaffirmed this holding. See United States Fire Insurance Co. v. Royal Insurance Co., 759 F.2d 306, 309 (3d Cir. 1985). There being no change in Pennsylvania law, we once again iterate that, under Pennsylvania law, clear and convincing evidence is necessary to prove bad faith.

Although the district court did state that it "clearly" found Nationwide's conduct outrageous, that language is an insufficient indication that the court used the correct standard in finding bad faith, especially in light of the court's

9

rejection of Nationwide's arguments that a heightened standard of proof is appropriate.

That the bad faith claim advanced by Polselli is predicated on a recently enacted statutory provision does not, in any way, undermine our conclusion. In enacting a statute, the legislature is presumed to have been familiar with the law as it then existed and the judicial decisions construing it. See Raymond v. School Dist., 142 A.2d 749 (Pa.Super. 1958). Had the legislature intended to make changes in the law with respect to the burden of persuasion necessary to prove bad faith, it could have done so expressly. See Harka v. Nabati, 487 A.2d 432, 435 (Pa.Super. 1985). By failing to articulate any changes, the legislature implicitly acknowledged that the existing standards remain applicable.

Nationwide next asserts that the district court incorrectly defined bad faith. The court stated that "Nationwide knew or recklessly disregarded the lack of a reasonable basis for denying the claims." Nationwide contends that a reckless standard is insufficient to constitute bad faith. Section 8371 does not define the term "bad faith." The Pennsylvania rules of statutory construction provide that words and phrases that "have acquired a peculiar and appropriate meaning. . . shall be construed according to such peculiar and appropriate meaning. . . ." 1 Pa. Con. Stat. Ann. § 1903 (Supp. 1992). In the insurance context, the term "bad faith" has acquired a peculiar and universally acknowledged meaning:

10

> Insurance.  "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will;  mere negligence or bad judgment is not bad faith.

Black's Law Dictionary 139 (6th ed. 1990) (citations omitted). See also Seeger by Seeger v. Allstate Ins. Co. 776 F. Supp. 986, 989 (M.D. Pa. 1991); Coyne v. Allstate Ins. Co., 771 F. Supp. 673, 677 (E.D.Pa. 1991).  Thus, only mere negligence on the part of the insurer is insufficient to constitute bad faith; recklessness, however, can support a finding of bad faith.

Contrary to Nationwide's assertion, Martin does not hold otherwise.  In analyzing Section 908(2) of the Restatement of Torts (Second) dealing with punitive damages, Martin distinguished between two distinct types of reckless conduct. The court held that punitive damages are appropriate where a defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to that risk.  Martin, 494 A.2d at 1097.  However, where the defendant does not realize or appreciate the high degree of risk, even though a reasonable person would, punitive damages are inappropriate.  Id.  Thus, Nationwide contends that Martin stands for the proposition that reckless behavior cannot support a finding of bad faith.  Martin, however, is inapposite.

11

First, the discussion in Martin dealing with recklessness was in the context of the tort of outrageous behavior not in the context of bad faith. Martin does not define bad faith. In any event, Martin does not hold that a finding of recklessness is insufficient for a court to impose punitive damages. In fact, the court stated that "punitive damages are awarded . . . for acts done with a bad motive or with a reckless indifference to the interests of others." Id. (citation omitted). Martin merely held that the recklessness had to rise to a more culpable level beyond gross negligence. Id. at 1098. Therefore, the court in the instant case did not err in concluding that reckless behavior can constitute bad faith. However, this in no way minimizes the plaintiff's duty to prove bad faith by the clear and convincing standard.

Finally, Nationwide contends that the district court clearly erred in attributing virtually sole responsibility to it for the delayed settlement payments for Regina's ALE and Contents claims. Specifically, Nationwide claims that, contrary to the district court's findings, it had no obligation to make partial or advance payments, and it had no knowledge of Regina's personal circumstances. Nationwide also claims that the court erroneously concluded that it had no reasonable basis to contest Regina's claims.

In light of our disposition of this case, reversing the district court's decision for failure to apply the correct burden of proof, we do not reach this issue. On remand, the district court should examine the evidence to ascertain whether

12

it is so "clear, direct, weighty and convincing" so as to enable the court to make its decision with "a clear conviction." United States Fire, 759 F.2d at 309 (quoting In re Estate of Fickert, 337 A.2d 592, 594 (Pa. 1975)). Without expressing an opinion as to the result the district court should reach, we emphasize that in making its determination the court should consider the unique circumstances of this case. Specifically, the court should consider whether the early filing of the bad faith suit against Nationwide, even before it completed it investigation, and the cancellation of Regina Polselli's deposition by her attorney, which would have aided Nationwide in computing the amount of the claims, contributed to an atmosphere unconducive to settlement. The court may want to consider whether once suit had been filed, did it have a deterrent effect on the negotiations between the adjusters or counsel for the parties. Moreover, although it was not unusual for Nationwide to make advances on pending insurance claims, the court should ascertain whether failure to make an advance in this case is evidence of bad faith, when the insurance agreement did not require it.

On the other hand, the court should consider whether Nationwide's delay in responding to communications from Polselli, its poor response time in engaging an investigator and in conducting the investigation and its handling of the settlement negotiations suggest that Nationwide did not "accord the interest of its insured the same faithful consideration it gives its own interest." Cowden, 134 A.2d at 228. On remand, the court should

13

ascertain whether any of these factors militate for or against a finding that Nationwide acted in bad faith.

Accordingly, we hold that the district court erred insofar as it held that under Pennsylvania law a preponderance of the evidence standard is sufficient to prove bad faith on the part of an insurer. The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.