**George JUNG and Anne Marie Jung, Plaintiffs,**

**v.**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Nationwide Mutual Insurance Company, And Nationwide Insurance Company, Defendants.**

Civil No. 95–CV–6708.

United States District Court, E.D. Pennsylvania.

Jan. 10, 1997.

John D. Briggs and James D. Greenberg, Katherman Martz & Gailey, York, PA, for Plaintiffs.

Lee Ullman and Barbara E. Brockman, Forry, Ullman, Ullman & Forry, P.C., Reading, PA, for Defendants.

Stephen F.J. Martin, Commonwealth of PA–Insurance Dept., Harrisburg, PA, for Movant.

## MEMORANDUM

CAHN, Chief Judge.

Plaintiffs George and Anne Marie Jung filed a complaint in this court for breach of a homeowner's insurance contract, seeking reimbursement for a loss of personal property due to vandalism. Plaintiffs also demanded punitive damages pursuant to Pennsylvania's

bad faith statute, 42 Pa.C.S.A. § 8371. Defendants Nationwide Mutual Fire Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Insurance Company (collectively "Nationwide") now move for partial summary judgment on Plaintiffs' bad faith claim.

## I. Background

On February 27, 1992, George and Anne Marie Jung, through Nationwide agent Ralph Davis, applied for a Golden Blanket Homeowners' Policy for their residence in Lancaster, Pennsylvania. The policy was issued by Nationwide effective that day. The Jungs timely paid all required premiums. On August 23, 1994, the Jungs' home was vandalized and much of the Jungs' personal property was damaged or destroyed. The Jungs submitted a claim and Nationwide began an investigation.

Nationwide's investigation revealed that the Jungs misrepresented information on their insurance application. Specifically, the application asked, "Has insured or family member been sued, filed bankruptcy, had repossession/judgment within the last 7 years?" The question was followed by the letter "N," for no, and the application was signed by Anne Marie Jung. (A. Jung Depo. 11/14/96, page 117, lines 4—10). At the time the application was signed, there were nine lawsuits in the Court of Common Pleas of Lancaster County which had been filed or were pending within the past seven years, and to which the Jungs were defendants. Mrs. Jung admits that the answer to the question regarding lawsuits and judgments was incorrect. (A. Jung Depo. 11/14/96, page 117, lines 24—25). On October 20, 1994, Nationwide rescinded the Jungs' policy effective February 27, 1994, the date on which the policy had last been renewed. Other than a $1,000 advance, Nationwide did not pay the Jungs' claim for their vandalized property.

Section 8371, enacted by the Pennsylvania Legislature on February 7, 1990, and effective July 1, 1990, provides that, "if the court finds that the insurer has acted in bad faith toward the insured," the court may award interest, punitive damages, court costs and attorney fees. The Jungs allege that the rescission of the policy, in addition to various other actions by Nationwide in processing the Jungs' claim, constitutes bad faith.[1]

## II. Discussion

Nationwide claims that summary judgment is appropriate on the issue of bad faith because (1) Nationwide had a reasonable basis to rescind the policy, (2) the language of the policy did not foreclose their common-law right to rescind *ab initio,* and (3) Nationwide's other actions were reasonable and do not amount to bad faith.

### A. Summary Judgment Standard

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role is to determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party, with all reasonable inferences viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of material fact exists, but if the non-moving party fails to produce sufficient evidence in connection with an essential element of a claim for which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

---

1. Aside from the rescission, the Jungs allege that the following acts by Nationwide constitute bad faith: (1) failure to assist the Jungs in processing their claim, (2) rejection of the Jungs' proof of loss form, (3) failure to refer the Jungs to the pertinent policy provisions, (4) time frame violations under the Unfair Insurance Practices Act, 40 Pa.C.S.A. § 1171, (5) unreasonable and excessive depreciation in calculating the value of the vandalized property, (6) misrepresentation of the purpose of the $1,000 advance, (7) denial of storage costs, (8) ignoring the Pennsylvania Insurance Department order to reinstate coverage and waiting four months to inform the agency of a jurisdictional question, (9) failure to question the Jungs as to innocence of the misrepresentation, and (10) failure to advise the Jungs that there was a one year statute of limitations in their policy. Pltf. Mem. in Opp. to Def. Mtn. for Sum. Judgment pp. 5—6.

## B. Rescission of the Policy

■ Section 8371 does not define bad faith. However, in 1994, the Superior Court of Pennsylvania clarified the meaning of bad faith in *Terletsky v. Prudential Property and Casualty Ins. Co.*:

> 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994), *citing* Black's Law Dictionary 139 (6th ed.1990). The court continued, "bad faith must be proven by clear and convincing evidence and not merely insinuated," and completed its analysis by stating, "[f]inally, to recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* (citations omitted). Recklessness is required to support a finding of bad faith; mere negligence or an incorrect analysis of the law is insufficient to sustain liability. *Polselli v. Nationwide Mutual Fire Ins.*, 23 F.3d 747, 751 (3d Cir.1994); *Horowitz v. Federal Kemper Life Assur. Co.*, 861 F.Supp. 1252, 1262 (E.D.Pa.1994), *aff'd in relevant part, vacated in part*, 57 F.3d 300 (3d Cir.1995).

The Jungs contend that the act of rescission by Nationwide constituted bad faith. Nationwide contends that it had a reasonable basis for denying the Jungs' claim and rescinding the policy.

■ Under Pennsylvania law, an insurance company may rescind a policy if (1) the application contained a misrepresentation, (2) the misrepresentation was material to the risk being insured, and (3) the insured knew that the representation was false when made, or the insured made the representation in bad faith.[2] *New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir.1991); *American Franklin Life Ins. Co. v. Galati*, 776 F.Supp. 1054, 1059 (E.D.Pa.1991). In order to defeat a bad faith claim, Nationwide must show only that it *reasonably believed* that the three-part test was met, not that each element was actually met. *Terletsky*, 649 A.2d at 688. In order for the court to grant summary judgment for the insurer, however, Nationwide must show that reasonable minds could not differ on the question of the reasonableness of Nationwide's belief that rescission was appropriate. If a jury could find by clear and convincing evidence that Nationwide's belief that it could rescind the policy was unreasonable, summary judgment is not appropriate.

■ This court finds that Nationwide has met its burden, and has shown that no reasonable jury could find that Nationwide unreasonably rescinded the policy. Though plaintiffs have presented some support for their proposition, none of it rises to the stringent level of clear and convincing evidence.

The first element of the test is clearly met. The Jungs' application stated that no suits or judgment had been filed against them in the past seven years, and Mrs. Jung admitted in her deposition that this statement was incorrect. Thus, the application for insurance contained a misrepresentation.[3]

2. "Bad faith" in the context of a material misrepresentation is separate from, and should not be confused with, bad faith under 42 Pa.C.S.A. § 8371.

3. Plaintiffs have filed a motion to strike their insurance application from consideration in the summary judgment proceedings on the grounds that the application may be inadmissible at trial pursuant to 40 Pa.C.S.A. § 441. This motion is denied. Assuming § 441 applies, the application will be inadmissible at trial on the Jungs' main claim for coverage. However, the application

may be considered by the court for purposes of the summary judgment motion on the bad faith claim. The purpose of § 441 is to ensure that the insured has before him all the terms of his contract so that he might know everything on which the insurer might later rely in resisting payment of a claim under the policy. *Nacchio v. New York Life Ins.*, 200 F.2d 770, 773 (3d Cir. 1952) A bad faith claim is separate and completely independent from the basic claim for coverage. *Winterberg v. CNA Ins. Co.*, 868 F.Supp. 713, 722 (E.D.Pa.1994), *aff'd*, 72 F.3d 318

Nationwide meets the second prong of the test, that the misrepresentation was material, through the uncontradicted deposition testimony of its employees Randy Caton and Bradley Sloane. Materiality is generally considered a mixed question of fact and law for the jury, but if "reasonable minds cannot differ on the question of materiality," the court may resolve the issue at the summary judgment stage. *Parasco v. Pacific Indemnity Co.*, 920 F.Supp. 647, 654 (E.D.Pa.1996), *citing Gould v. American–Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir.1976). Information on an application is material "if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate." *American Franklin Life Ins. Co. v. Galati*, 776 F.Supp. 1054, 1060 (E.D.Pa. 1991), *citing New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir.1991). A misrepresentation can be material to the risk assumed by the insurer even if it is not related to the loss actually incurred. *Galati*, 776 F.Supp. at 1060 n. 9, *citing Woods v. National Life and Accident Ins. Co.*, 380 F.2d 843, 848 n. 12 (3d Cir.1967).

In the instant case, the Jungs, through Anne Marie Jung, stated on the application that no suits or judgments had been filed against them in the past seven years. Mr. Caton and Mr. Sloane both testified that the existence of multiple judgments and lawsuits would have been taken into account when assessing the risk of a particular policy. (Sloan Depo. 8/27/96 pages 32—36; Caton Depo. 7/9/96 pages 32—36, 41—43).

Rather than providing the court with evidence that the suits and judgments were not material to Nationwide's issuance of the policy, Plaintiffs simply respond that Nationwide knew of the lawsuits and judgments before its investigation into the Jungs' vandalism claim, yet continued to renew the policy. The judgments and lawsuits must not be material, they argue, otherwise Nationwide would not have renewed the policy. For support, the Jungs point to deposition testimony of Nationwide agent Ralph Davis, Jr. and documents which indicate that Nationwide received credit reports on the Jungs within 60 days of the application and again at the time of renewal.

The deposition testimony of Ralph Davis fails to support Plaintiffs' contention. Mr. Davis acknowledged that he knew of a class action suit, in which Mr. Jung was a defendant, relating to houses which had washed out at the bottom of a swale.[4] (Davis Depo. 6/17/96, pages 101—102). However, both Mr. Caton and Mr. Sloan testified that *multiple* suits or judgments would be cause for concern in issuing an insurance policy. The fact that Nationwide may have known about one legal proceeding simply does not mean that Nationwide knew about all of them, and

(1995). To refuse to look at the application at this point in the proceedings would be irrational and inconsistent with the purposes of both § 441 and § 8371. Indeed, in *Horowitz v. Federal Kemper*, 861 F.Supp. 1252 (E.D.Pa.1994), Judge Robreno simultaneously found the application inadmissible under § 441 because it had not been attached to the policy (and therefore held that the insured was entitled to the life insurance proceeds), but granted summary judgment for the insurer on the bad faith claim because of a material misrepresentation in the application. Without specifically addressing the admissibility of the application in its bad faith analysis, the Third Circuit Court of Appeals affirmed summary judgment in favor of the insurer on bad faith, but remanded for factual findings on the issue of attachment. *Horowitz v. Federal Kemper*, 57 F.3d 300 (3d Cir.1995). Following remand, Judge Robreno submitted the attachment issue to a jury, which found for the insured.

4. Plaintiffs contend that Mr. Davis' testimony shows that he knew of two lawsuits, one "a class action suit on a home [Mr. Jung] built that was at the bottom of a cul-de-sac," and the other "the claim with the homeowners that was there on the people that he sold a house to at the bottom of a swale that was washed out." (Davis Depo. 6/17/96 pages 101—102). Plaintiffs incorrectly read the deposition. Mr. Davis' description of the cul-de-sac suit was in response to the question, "had you ever had any experiences with either Mr. or Mrs. Jung that led you to question their truthfulness and integrity." He testified that the "only claim we ever had" was the cul-de-sac claim. Plaintiff's attorney then immediately repeated the exact same question, and Mr. Davis responded that the "only thing that ever threw any indication at all might have been the claim with the homeowners." It is clear that Mr. Davis was merely repeating his first response, and that Mr. Davis knew of only one lawsuit.

the fact that Nationwide may have renewed the Jungs' policy with the knowledge of one suit does not mean that they would have renewed the policy had they known about nine suits.

Plaintiffs next contend that Nationwide requested the Jungs' credit reports on March 11, 1992 (one month after the application), and again on March 16, 1993. As they do with Mr. Davis' deposition, Plaintiffs argue that the credit reports could raise an issue of fact as to Nationwide's awareness of the Jungs' legal history, and that a reasonable jury could infer that Nationwide was aware of the lawsuits when it renewed the policy. This leads to the reasonable inference, they argue, that the Jungs' misrepresentation was not material. Plaintiffs submit to the court a copy of their credit report, which shows a report requested by Nationwide on March 16, 1993. (Pltf.exh. 49). They also submit a Nationwide policy data sheet for the Jungs with "credt bur r," which presumably stands for credit bureau request, on March 11, 1992. (Pltf.exh. 50). What Plaintiffs do not submit is anything that would raise an issue of fact as to Nationwide's knowledge of the lawsuits and judgments at issue. The Jungs have not presented the court with any evidence that the lawsuits and judgments were a part of those credit reports, and they certainly have not presented anything that could meet the clear and convincing standard. Therefore Nationwide's receipt of the reports does not meet Plaintiffs' burden, as the non-moving party, of presenting sufficient evidence on an essential element of a claim to raise an issue of fact for the jury. *See Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. To defeat Nationwide's summary judgment motion on the bad faith claim, the Jungs must show that Nationwide's rescission was unreasonable. It was not unreasonable for Nationwide to conclude that the misrepresentation was material.

The final element of the rescission test requires that the Jungs either knew the misrepresentation was false when it was made, or that they made it in bad faith. Mrs. Jung admitted in her deposition that, at the time she signed the application, the answer to the question pertaining to prior suits and judgments was false. However, Plaintiffs contend that Nationwide knew about the lawsuits and judgments through Mr. Davis, and that they are entitled to the reasonable inference that Nationwide knew that the misrepresentation was innocent. If Nationwide knew the statement on the application was false at the time it was made, yet issued the policy anyway, Nationwide could not later have rescinded the application.[5] In this case, Plaintiffs have not presented the court with any evidence of Mr. Davis' knowledge beyond the deposition testimony referenced above. Mr. Davis' testimony is insufficient to raise an issue of fact as to his awareness of the multiple lawsuits and judgments, either at the time the application was signed or at the time of renewal.

The Jungs make a second argument, however. They contend that although Mrs. Jung signed the application, it was filled in by Mr. Davis, not by her, and that she never looked at it before signing it. (A. Jung Depo. page 117). Therefore, they claim, Nationwide fails the third prong of the rescission test because the misrepresentation was innocent.

 In Pennsylvania, an applicant for insurance "may not avoid the responsibility imposed by the application by signing a blank form and leaving it to another to fill in the appropriate responses." *Galati*, 776 F.Supp. at 1061; *see also Van Riper v. Equitable Life Assurance Soc'y*, 561 F.Supp. 26, 33 (E.D.Pa.1982), *aff'd*, 707 F.2d 1397 (3d Cir.1983); *Peer v. Minnesota Mutual Fire & Casualty Co.*, 1995 WL 141899, at *6 (E.D.Pa.1995). "Even if the applicant provides correct information to the individual entrusted to complete the form, the subsequent failure to review and correct the information which was improperly recorded constitutes bad faith." *Peer*, 1995 WL 141899 at *6, *citing Monarch Life Ins. Co. v. Donahue*, 708 F.Supp. 674 (E.D.Pa.1989) (construing Pennsylvania law).

Therefore, Nationwide could not reasonably rescind the policy at a later date for material misrepresentation.

---

5. If Nationwide had issued the policy with full knowledge of the misrepresentation, the misrepresentation could not be material by definition.

Mrs. Jung, just as the insured in *Galati*, signed an application which contained a printed representation that the answers given were true. Just as in *Galati*, she admitted that the application bearing her signature contained a misrepresentation. And, just as in *Galati*, either Mrs. Jung reviewed the application and therefore made the false statement with knowledge of its falsity, or she failed to review the application and relied on another to fill it in, thus rendering her act of signing the application bad faith under Pennsylvania law. *Galati*, 776 F.Supp. at 1061. As a matter of law, therefore, Mrs. Jung's claim that Mr. Davis filled in the application, or that she never read it, is insufficient to preclude rescission.

■ Plaintiffs' final argument is that Mrs. Jung was confused, and that she answered "no" on the application because the prior suits and judgments had all been against the Jungs' business, Slater Construction. However, Mrs. Jung's state of mind is irrelevant. Before the court is Nationwide's summary judgment motion on the bad faith claim, and at this point in the proceedings it is irrelevant whether Mrs. Jung actually knew of the statement's falsity or made the statement in bad faith. What is relevant is whether or not Nationwide reasonably believed that Mrs. Jung knew the falsity or made it in bad faith. If Nationwide reasonably believed that Mrs. Jung acted with knowledge of the falsity or in bad faith, then Nationwide is not liable for bad faith damages under 42 Pa.C.S.A. § 8371, regardless of Mrs. Jung's actual state of mind.

I find that reasonable minds could not differ on this issue, that Nationwide reasonably thought the test had been met, and therefore that Nationwide reasonably thought rescission was appropriate. Even if Plaintiffs were able to present sufficient evidence at trial so that a reasonable jury could find by clear and convincing evidence that the misrepresentation was innocent, they have failed to present any evidence that Nationwide had any reason to believe that the misrepresentation was innocent. The mere fact that the suits and judgments related to the Jungs' construction business, in which the Jungs were partners, is not enough to raise an issue of fact as to the reasonableness of Nationwide's rescission. Nationwide reasonably believed that the Jungs had knowingly or in bad faith made a material misrepresentation on the application. Therefore, pursuant to *Terletsky*, Nationwide's rescission of the Jungs' homeowners policy was not done in bad faith.

## C. Policy Language

Plaintiffs next claim that the language of the policy itself limited Nationwide to prospective cancellation, not retrospective rescission. Nationwide responds that it clearly has a common-law right to rescind a policy procured through fraud, and that it reasonably relied on that right.

■ The Pennsylvania Supreme Court discussed the common-law right of rescission in *Metropolitan Property v. Insurance Commissioner and Miller*, 525 Pa. 306, 580 A.2d 300 (1990). In *Miller*, the insurer discovered a material misstatement in the insured's application and rescinded the policy back to the date the policy was issued. Miller contested the rescission, arguing that the Pennsylvania Unfair Insurance Practices Act ("UIPA"), 40 Pa.C.S.A. § 1171.5, limited the insurer to prospective cancellation or non-renewal once it discovered fraud or material misrepresentation. The court disagreed, holding that the UIPA could not be interpreted to "foreclose such a long-standing right" to rescind *ab initio*. *Miller*, 580 A.2d at 303. The Jungs' homeowners' policy uses exactly the same language as the Pennsylvania Unfair Insurance Practices Act.[6] The *Miller* opinion therefore controls this case. However, even if Nationwide's analysis of the law was incorrect,[7] I find on the basis of *Miller* that no

---

6. Both the policy and the statute state that, after 60 days, the policy may not be cancelled unless it "was obtained through material misrepresentation, fraudulent statement, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by" the insurance company. 40 Pa.C.S.A. § 1171.5(9).

7. I do not express an opinion on whether Nationwide's interpretation of the law was correct. This is irrelevant, because as long as Nationwide's act was reasonable, bad faith cannot be found even if their analysis of the law was wrong. *Horowitz v. Federal Kemper Life Assur.*

reasonable jury could conclude that Nationwide's reliance on its common-law right was unreasonable.

Plaintiffs respond that Nationwide, at a different time, had issued a completely separate business policy to the Jungs which, in addition to cancellation language identical to that in the Jungs' homeowners policy, stated that the "policy may also be cancelled from inception upon discovery" of fraud or misrepresentation. However, the existence of other policies which may have been more explicit about the right to rescind is not relevant to Nationwide's interpretation of the Jungs' homeowners' policy at the time it decided to rescind. In addition, the policy at issue in this case also contained a "concealment and fraud" section which stated, "[w]e do not provide coverage for an insured who has by design concealed or misrepresented a material fact or circumstance relating to this insurance." The combination of Nationwide's common-law right to rescind and the concealment or fraud language is more than enough to give Nationwide a reasonable basis to rescind the policy. Nationwide's rescission of the Jungs' policy was reasonable and not in bad faith, therefore summary judgment is appropriate.

### D. Other Bad Faith Allegations

Plaintiffs next argue that their bad faith claim is based upon more than the rescission of the policy, and that Nationwide's handling of the claim throughout this controversy has been in such a manner as to constitute bad faith regardless of the reasonableness of the rescission.

Plaintiffs cannot sustain a bad faith claim on these facts. Section 8371 was passed by the Pennsylvania Legislature specifically to rectify the lack of a common-law remedy for bad faith conduct in denying an insured's claim.[8] Beyond that, "[t]here is no legislative history that specifically concerns this statute, which was enacted as part of a comprehensive insurance bill." *Younis Brothers v. Cigna Worldwide Ins. Co.*, 899 F.Supp. 1385, 1396 (E.D.Pa.1995), *aff'd*, 91 F.3d 13 (3d Cir.1996), *petition for cert. filed* 10/28/96. It is clear, however, that the crux of a bad faith claim under § 8371 is the denial of coverage by an insurer when it has no good reason to do so. *Grove v. Aetna Casualty & Surety Co.*, 855 F.Supp. 113, 115 (W.D.Pa. 1993) (citations omitted) ("The majority of courts to have considered the issue have held that 'bad faith conduct' in the context of section 8371 refers to a bad faith denial of coverage.").

In this case, because of a material misrepresentation by Plaintiffs, I have held that Nationwide acted in good faith regarding its denial of coverage. Plaintiffs, however, continue to demand punitive damages for Nationwide's peripheral actions related to the investigation and denial of the Jungs' claim. To the best of my knowledge, there have been no analogous cases. The majority of § 8371 cases deal with extremes: frivolous denials of coverage are clearly actionable, while an aggressive defense of the insurer's interest is not bad faith. *See, e.g., Terletsky*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994); *Kauffman v. Aetna Casualty & Surety Co.*, 794 F.Supp. 137, 141 (E.D.Pa.1992). Neither this court, nor Plaintiffs or Defendants counsel, have been able to locate a case where the insurance company reasonably denied coverage because of an insured's misrepresentation, yet the insurer's related actions were found to be in bad faith. Accordingly, this court must predict how the Pennsylvania Supreme Court would rule if presented with this issue. *See, e.g., Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 364 (3d Cir.1990).

I agree with Judge Bartle of this district that, if presented with the issue, "Pennsylvania [courts] would apply the duty to act in good faith to 'each party' to an insurance contract, including the insured."

---

Co., 861 F.Supp. 1252 (E.D.Pa.1994), *aff'd in part, vacated in part*, 57 F.3d 300 (3d Cir.1995).

**8.** The Pennsylvania Supreme Court, in *D'Ambrosio v. Pennsylvania National Mutual*, 494 Pa. 501, 431 A.2d 966, 970 (1981), held that an insured who had been denied coverage and who sought punitive damages for bad faith conduct in denying his claim had no cause of action for the bad faith claim. In 1990, the Pennsylvania Legislature responded by creating a cause of action against insurers for bad faith conduct through § 8371. *Rottmund v. Continental Assur. Co.*, 813 F.Supp. 1104, 1110 (E.D.Pa.1992).

Greater New York Mutual Ins. Co. v. North River Ins. Co., 872 F.Supp. 1403, 1408 (E.D.Pa.1995), aff'd, 85 F.3d 1088 (3d Cir. 1996). Nationwide reasonably thought that the Jungs' violated their duty by making a fraudulent statement on the application. Nationwide investigated the claim and acted to protect its interest because of this belief. This conduct, even if it approached the limits of bad faith, cannot form the basis of a cause of action against Nationwide without some further evidence of dishonest purpose or evil motive. Cf. Terletsky, 649 A.2d at 688. Nationwide had a reasonable basis to investigate and deny the claim; therefore, their subsequent and related conduct is not in bad faith.

██ The law is meant to dissuade an insurance company from using its economic power to coerce and mislead insureds; it does not purport to interfere with an insurance company's right to investigate and litigate the legitimate issue of misrepresentation in an application. Cf. Kauffman v. Aetna Casualty & Surety Co., 794 F.Supp. 137, 141. (E.D.Pa.1992) (no doubt that insurance company has a right to litigate a claim). Nationwide had a reasonable basis to investigate and deny coverage based upon its belief that the Jungs had made a material misrepresentation. As a matter of law, I hold that, if the insureds initially taint the insurance contract by breaching their duty to the insurer, thereby giving the insurer a reasonable basis on which to deny the claim, the insurer's subsequent actions related to the defense against the insureds' claim cannot constitute bad faith.

Such a result is consistent with the Third Circuit Court of Appeals' directive in Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d 747 (3d Cir.1994). In Polselli, the Court of Appeals remanded the issue of bad faith to the district court, with the instructions that the lower court should consider whether actions by the insured would militate against a finding of bad faith. Id. at 752. The court directed, "[s]pecifically, the [district] court should consider whether the early filing of the bad faith suit against Nationwide, even before it completed its investigation, and the cancellation of [insured's] deposition by her

attorney ... contributed to an atmosphere unconducive to settlement." Id.

In light of the Jungs' material misrepresentation on their insurance application, Nationwide's response was not unreasonable or in bad faith. Everything on Plaintiffs' list of ten alleged bad faith acts is closely connected with Nationwide's investigation into and denial of the base claim, and is therefore part and parcel of Nationwide's reasonable response.

Even assuming, arguendo, that these ten things were separately directed at the Jungs and were not connected to the investigation and denial, none of them rise to the independent level of bad faith required by Terletsky. Plaintiffs simply have not presented enough evidence for a reasonable jury to find by clear and convincing evidence that Nationwide acted in bad faith.

There is no evidence that Nationwide had an ill or dishonest motive in its relations with the Jungs, nor do Plaintiffs' allegations describe conduct sufficiently egregious to be considered reckless rather than merely negligent. See Polselli, 23 F.3d at 751. Plaintiffs allege that Nationwide deceived the Insurance Department by not raising a jurisdictional issue for four months and by ignoring an Order to reinstate coverage. However, that Order was the result of proceedings at which Nationwide was not present and did not submit any evidence. Both Nationwide's assumption that it did not have to reinstate coverage in light of its common-law right to rescind a policy due to misrepresentation and Nationwide's reliance on its right to raise issues on appeal are clearly reasonable and cannot amount to bad faith.

Plaintiffs are left with nine allegations of bad faith conduct. These allegations are: failure to assist the Jungs in processing their claim, rejection of the Jungs' proof of loss form, failure to refer the Jungs to pertinent policy provisions, time frame violations, unreasonable and excessive depreciation, misrepresentation of the purpose of a $1,000 advance, denial of storage costs, failure to question the Jungs as to the innocence of their misrepresentation, and failure to advise the Jungs that there was a one year statute of limitations in their policy. Plaintiffs' theo-

ry is that these actions were motivated by Nationwide's desire to avoid paying the claim for the vandalized property. Of course, since this is presented on a summary judgment motion, the court is required to view the facts and draw inferences in a light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. "The court need not accept the non-moving party's legal conclusions," however. *Kauffman,* 794 F.Supp. at 139. In addition, "the court must inevitably consider the substantive evidentiary burden of the parties that would apply at the trial on the merits." *Peer,* 1995 WL 141899, *4, *citing Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. Finally, "the nonmoving party must raise more than a mere scintilla of evidence in its favor in order to overcome a summary judgment motion .. [and] cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive" the motion. *Parasco,* 920 F.Supp. at 652 (internal quotation marks and citations omitted).

Plaintiff's theory is too tenuous to support a jury finding by clear and convincing evidence that Nationwide acted in bad faith. Nationwide validly and reasonably investigated the Jungs' claim, then rescinded the policy, within sixty days as required by the UIPA. It gave the Jungs a $1,000 advance which it never sought to reclaim. The denial of storage costs was in accordance with the limits in the homeowners' policy. It promptly and fully investigated the claim.[9] Nationwide acted reasonably in light of the Jungs' misrepresentation, and its rejection of a form, the depreciation taken, and failure to be too helpful do not provide the basis for a jury finding that Nationwide acted recklessly or with an ill-motive.

■ Plaintiffs rely on a notation in Roger Cranford's[10] log book on August 31, 1995, that the statute of limitations had passed for the Jungs; and that Nationwide had savings in excess of $44,731.57. Though this may have been akin to gloating, gloating is not the same as bad faith. One sentence in a log book cannot support Plaintiffs' theory that Nationwide, throughout this process, acted purposefully and with the intent of avoiding just payment to the Jungs.

I find that Nationwide's response to the Jungs' claim, from the time of its investigation through the litigation, was reasonable. Though it may at times have bordered on negligent, there is not enough evidence to show reckless conduct or ill-motive. No reasonable jury could find otherwise by clear and convincing evidence.

## CONCLUSION

For the reasons set forth above, the court grants Defendants' Motion for Partial Summary Judgment. An appropriate order follows.

### *ORDER*

AND NOW, this 10th day of January, 1997, upon consideration of Defendant's Motion for Partial Summary Judgement on Plaintiff's Bad Faith Claim and Plaintiff's Response thereto, it is hereby ORDERED that Defendant's motion is GRANTED.

---

9. Plaintiffs allege that Nationwide's investigation was in bad faith because Nationwide did not question the Jungs as to the innocence of their misrepresentation. I disagree. Nationwide investigated the claim filed by the Jungs and questioned the Jungs as to the false statements on the application. Nationwide was under no obligation to ask Mrs. Jung about her state of mind when she signed the application; any alleged failure to do so cannot constitute bad faith.

10. Mr. Cranford is an adjuster for Nationwide.