# Lincoln General Insurance Co. v. Gracie Corp. of N.J.

C.P. of Chester County, No. 2008-06251

*Paul T. DeVlieger,* for plaintiff
*Holly E. Smith,* for defendants

TUNNELL, *J.,* March 6, 2013—This case involves the law of principal and surety. Because of the operation of the "prima facie evidence clause" contained in the parties' agreement, the court is able to enter judgment as a matter of law.

Lincoln General Insurance Company ("LGIC") filed a complaint against the several defendants for breach of an express contract, a "General Indemnity Agreement" dated July 28, 2003. The agreement recites that Gracie Corporation, as "the Principal", may be required to provide surety bonds, and may request LGIC, as the "Surety", to execute such bonds, providing however that the Principal and the individual defendants as "Indemnitors" indemnify LGIC for any losses and expenses arising out of the same. The defendants have admitted that they signed this agreement. All of the terms and conditions adhere to each of them.

More specifically, the agreement provides as follows:

"1. INDEMNITY. The Undersigned [Gracie and the individual Indemnitors] shall indemnify and keep

indemnified the Surety against any and all liability for losses and expenses of whatsoever kind or nature, including attorney fees and costs, by reason of having executed or procured the execution of Bonds, or by reason of the failure of the Principal or Indemnitors to perform or comply with the covenants and conditions of this agreement."

LGIC has asserted that, at Gracie's request, it proceeded to issue a series of bonds for numerous projects in Pennsylvania and New Jersey. Defendants have admitted this too. Because LGIC asserts that it has not been fully indemnified for the expenses arising out of these bonds, the matter found its way into court in 2008, and is now ripe for determination by means of plaintiff's motion for summary judgment.

Contract cases, because of their nature, often lend themselves to disposition upon a motion for summary judgment. The evidence will often be documentary, and the main piece of that evidence is the contract itself. As with the insurance policy issues, the scope and limitation of the contract may be resolved when the terms are clearly spelled out in the contract.

In responding to plaintiff's motion, the defendants have, by and large, mimicked their responses to the original complaint of five years ago; they sufficed to assert general denials and other averments which appear to evade rather than meet, confront and explain. Otherwise the chief defense to liability is the allegation, repeated in nearly every paragraph of the response, that "an Oral Agreement was made between defendants and Paul Alongi whereby LGIC would receive any monies due and owing from

the City of Philadelphia in full and final satisfaction of any claims settled by LGIC on behalf of the defendants." (Defendants' response to plaintiff's motion for summary judgment, §§4, 5, 6, 8, 9, 10, 12).

There are several problems with this. First, an oral modification of an express written contract is undoubtedly an affirmative defense which must be raised pursuant to Pa. R.C.P. 1030 as part of new matter. This is because an oral modification, like the defenses of rescission, substituted contract and novation, effects an immediate change in the legal relations between the parties and discharges the original duty in whole or in part, whereby following a breach the other party is foreclosed from enforcing the original duty. See *Refuse Management Systems, Inc. v. Consolidated Recycling and Transfer Systems, Inc.,* 448 Pa. Super. 402, 671 A.2d 1140 (Pa. Super. 1996). Defendants never raised this defense in new matter, nor sought leave to do so later. It is waived.

Even if it were not waived, there are additional problems. A party in defendants' position would have to demonstrate with sufficient factual evidence that the pre-existing duty rule is not offended, and that there was consideration for the amendment.

This agreement contains the following term:

"19. MODIFICATION. The rights and remedies of the Surety under this Agreement may not be waived or modified except by written amendment signed by the Surety."

A party in the defendants' position would also have to show that there was an intent to waive this clause, and

that by clear and convincing evidence, *Brinich v. Jencka,* 757 A.2d 388, 399 (Pa. Super. 2000). Finally, the authority of the individual purportedly modifying the agreement on behalf of the surety would have to be demonstrated.

None of this occurred.

The law of principal and surety is ancient and in some respects peculiar. The surety under an express indemnification contract is entitled to stand upon the letter of that contract. *Fidelity & Deposit Co. of Maryland v. Bristol Steel and Iron Works, Inc.,* 722 F.2d 1160, 1163 (4th Cir. 1983) (applying Pennsylvania law).

Defendants do not agree with the amounts claimed as due by plaintiff under the agreement. The agreement however contains what is known as a "prima facie evidence clause", within paragraph 1, which states as follows:

"The Surety may pay or compromise any claim, demand, suit, judgment, or expense arising out of the bonds, and any such payment or compromise made by the Surety in the reasonable belief that it was liable for the amount paid or that it was expedient under all the circumstances to make such payment or compromise, shall be binding upon the Undersigned as a loss or expense covered by this indemnity, whether or not such liability actually existed. An itemized statement of the payment or compromise, sworn to by an officer or the Surety, or the voucher or vouchers or other evidence of the payment or compromise; shall be *prima facie* evidence of the *fact* and the *amount* of the liability of the Undersigned under this agreement." (emphasis added)

Prima facie evidence clauses, also known as "good faith clauses" in this context, have been upheld by and enforced by the courts. See, e.g. Fidelity & Deposit Co., supra, 722 F.2d 1160, 1163; *United States Fidelity & Guaranty Co. v. Feibus*,15 F. Supp. 2d. 579, 588 (M.D. Pa. 1998). Moreover, courts have granted summary judgment in favor of a surety based on such a provision and the evidence provided thereunder. See, *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 210 (5th Cir. 1996), *Curtis T. Bedwell & Sons, Inc. v. International Fidelity Insurance*, 1989 W.L. 55388 (E.D. Pa. 1989).

So, as a matter of law, the principal is liable for the payments made by a surety, even where there may be no actual liability, provided only that the surety have paid in good faith. As has been observed:

> "However, the court notes that such good faith clauses, while harsh, are typical in surety agreements and have routinely been upheld. (citations omitted)

> Sureties enjoy such discretions to settle claims because of the important function they serve in the construction industry. The purpose of good faith clauses is to facilitate the handling of settlements by sureties and protect them from unnecessary and costly litigation. (citation omitted). It is believed that 'the expense, delay, trouble and risk of loss to the [surety] is a sufficient safeguard against an unwarranted payment'." *U.S. Fidelity & Guaranty Co. v. Feibus*, supra at 585.

Pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, summary judgment is appropriate:

(2) If, after the completion of discovery relevant to the

motion, including the production of expert reports, an adverse party who will bear the burden of proof at the trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

As noted, the opposing party, the defendants here, may not rest upon the mere allegations in their pleadings, but must instead set forth with specificity facts showing that a genuine dispute exists for the jury to determine at trial. *Tom Morrello Construction Co., Inc. v. Bridgeport Federal Savings & Loan Association,* 421 A.2d 747 (Pa. Super. 1980). The non-moving party may not avoid summary judgment by bald allegations or denials in his pleadings. *O'Neill v. Checker Motor Corp.,* 567 A.2d 690 (Pa. Super. 1989).

As explained above, the defense of oral modification was waived as a consequence of its not having been raised as part of new matter. Pa. R.C.P. 1032(a). No sufficient facts were averred in the first instance such as would properly make out the defense. Even if this main defense had not been waived, the deposition testimony presented by the defendants as part of their response in opposition to the motion for summary judgment would be insufficient to go to a jury on the issue. At most, the deposition testimony of Stayce Hawthorne simply describes a decision by LGIC to pay the outstanding balances of what Gracie already owed in an attempt to have Gracie get the remaining work done. This is wholly consistent with the terms of the General Indemnity Agreement and is hardly a "modification" of the same. Moreover, the defendant was already required to indemnify LGIC against any and all liability for such losses and expenses. It is hornbook law

that a promise to carry out an existing contract with the promisee provides no consideration because one is doing no more than he was already obliged to do. *Nicolella v. Palmer*, 432 Pa. 502, 509, 248 A.2d 20, 24 (1968). Nor was there any satisfactory showing that a Mr. Alongi had any authority to alter or change the written words of the parties' agreement. The court does not read the additional deposition excerpt of LGIC's officer, John Northrop as bolstering the defendants' theory. On page 54, he was asked the following:

Q. Were you aware of any agreement between Alongi, Sr. and Gracie Corporation that the funds received from the contract funds would be sufficient to cover any payments that Lincoln General paid on its behalf?

Mr. DeVlieger: Objection to form.

A. I'm not aware of any specific conversations.

Q. Did you ever speak to Mr. Alongi regarding any agreement that was made where Lincoln General would receive outstanding contract funds in satisfaction of payments made on Gracie's behalf?

Mr. DeVlieger: Same objection.

A. I don't recall specifics of the conversation, but yes, I would have.

Q. Yes, you would have?

A. Spoke to Mr. Alongi in regards to receiving the remaining contract funds.

This testimony would scarcely be sufficient to go to a jury as evidence of a modification with any contractual

significance. Yet it was all that was offered by defendants from an LGIC officer. For all the foregoing reasons, the defense of oral modification has failed.

On the issue of damages, an itemized statement from LGIC was reproduced by both parties as part of their submissions. The statement had clearly been the focus of their discovery depositions as well. The "bottom line" figure was $142,596.90, being the arithmetic total of all the various entries.

Under the agreement, this "shall be prima facie evidence of the fact and the amount of the liability of the undersigned under this agreement." Defendants did not articulate any issue with the document as being the equivalent to the "itemized statement" called for under the agreement. Instead, their complaint was that "the accounting provided by LGIC is replete with errors and miscalculation, and defendant disputes that such accounting accurately reflects any alleged liability of defendants, if such liability even exists." (Defendants' response to plaintiff's motion for summary judgment, ¶21). This was repeated verbatim in the last paragraph of the accompanying brief.

Nowhere do defendants bother to show where or how the document is "replete with errors", nor is there any demonstration of any "miscalculations". If ever there were a time for the defendants to come forward and produce evidence to support these bald allegations, the summary judgment stage was it. The defendants did not avail themselves of that opportunity.

The court struggled to find any further reference that might aid defendants in this regard. True, the defendants'

copy of the itemized statement, which bears a deposition sticker of "Northrop-7" contains highlighting and some handwritten notes. Defendants did attach a single page of Mr. Northrop's deposition for the court, where the following exchange appears:

Q. Why are certain payees highlighted on this spreadsheet?

A. The red highlights were claim payments to subcontractors suppliers, et cetera.

The light green/yellow highlights are representative of the remaining contract funds.

The blue highlights were monies advanced to Gracie from Lincoln General.

Q. Why would those funds be advanced?

A. If I remember correctly, at Gracie's request, to help pay some of their subcontractors and/or supplier.

Q. Were these highlighted in preparation for this deposition or was that highlighted previously?

A. I did it prior to the deposition, not specifically for the deposition, but to make it easier to identify certain payments on that spreadsheet.

(Northrop Deposition, pp. 55-56).

The court remains totally unedified as to how this helps the defendants, and thus this defense cannot succeed.

Due to the operation of the "prima facie evidence clause", the defendants cannot escape liability unless they meet the two exceptions the courts have recognized to

the enforcement of a principal's liability for the surety's disbursements, namely bad faith, or fraudulent payment. *United States Fidelity & Guaranty Co. v. Feibus* supra, 15 F. Supp. 2d at 585.

Defendants did produce evidence that Mr. Northrop of LGIC released certain payments to a subcontractor after receiving Gracie's instruction not to do so. By letter dated July 8, 2005, Gracie's President, Stayce Hawthorne, wrote to Mr. Northrop at LGIC telling him to "discontinue any future payments to RPM Contractors and Riddick & Riddick." Gracie complained that LGIC made a payment to Riddick & Riddick on September 21, 2005 against that direction. The court has searched the parties' agreement in vain for any provision that explicitly permits the Principal to so direct its Surety. The defendants do not characterize this conduct as "bad faith" but the court will proceed with its analysis as though the defendants had.

"Bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. *Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747, 751 (3d. Cir. 1994). Thus, a lack of diligence or negligence is not the equivalent of bad faith; indeed, even gross negligence cannot support a finding of bad faith. *Terletsky v. Prudential Property & Casualty Insurance Co.*, 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994). Bad faith requires a showing of recklessness or improper motive such as self-interest or ill will. *Polselli*, 23 F.3d at 751. Defendants, however, do not offer any evidence that LGIC was motivated by ill will or self-interest or anything of that kind in making this payment. The court reiterates the fact that the express language of the parties'

agreement permits the plaintiff to settle claims based on its reasonable belief that it was liable for the amount paid, or that it was expedient under all the circumstances, and such payment "shall be binding upon the Undersigned as a loss or expense covered by this indemnity, whether or not such liability actually existed." (General Indemnity Agreement, ¶1). Accord, *United States Fidelity & Guaranty Co. v. Feibus*, supra, 586-587.

Consequently, defendants have not met their burden. The finding of liability by the court rests on no credibility determinations whatsoever, and upon no more than on the operation of the parties' agreement. Consequently, the *Nanty-Glo* rule is not offended. See, *Nanty-Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932) [summary judgment may not be granted when based solely upon the oral testimony of the moving party].

The defendants in the present case have utterly failed to create a genuine issue of material fact for trial. An order granting summary judgment to the plaintiff shall be entered:

## ORDER

And now, March 6, 2013, upon consideration of plaintiff's motion for summary judgment and defendants' response thereto, it is hereby ordered that the motion is granted.

Judgment is entered in favor of plaintiff, Lincoln General Insurance Company, and against defendants, Gracie Corporation of New Jersey, t/a Gracie Corporation, Enrohtwah Enterprises, Inc., Judson Hawthorne, inc., Judson Hawthorne and Stayce Hawthorne, and each of

them, in the principal amount of $142,596.90.

Plaintiff shall file a motion for award of counsel fees and cost, with affidavit, within ten (10) days of this order, as well as its calculation of any pre-judgment interest claimed. Defendants may file any response thereto within ten (10) days thereafter.