## Parker v. Keystone Insurance Company

*Samuel Merovitz,* for petitioner.
*Paul A. Bechtel, Jr.,* for respondent.

GREENBERG, *J.,* July 9, 1981 — Before us are claims for No-fault benefits by Lloyd Parker, Sr. (hereinafter petitioner) against Keystone Insurance Company (hereinafter respondent).[1] Respondent has filed a counterclaim, in the nature of a request for counsel fees and costs, on the basis that said petition lacks reasonable foundation and that the claims are excessive. For the reasons set forth herein, we grant, in part, the petition for No-fault benefits, and deny the counterclaim.

## BACKGROUND

Naomi Parker (hereinafter decedent), the wife of petitioner, died on January 18, 1979, as a result of injuries sustained in an automobile accident with an uninsured motorist. Before her death, decedent had been employed on a part-time basis and her W-2 tax return for 1978 reflected earned income of $1,440.

Petitioner maintains that there were two insurance policies, issued by respondent, in effect at the time of decedent's death. Accordingly, petitioner contends that he should be permitted to stack the coverages in order to be fully compensated for his losses. The two policies have a combined total value of $40,000.[2]

---

1. This action had originally been instituted against respondent and USAA Casualty Insurance Company. After oral argument, we were advised that petitioner had settled their claims against USAA. Consequently, we have not addressed ourselves to petitioner's contentions against USAA.

2. The policies have identical provisions: $5,000 maximum for survivor's loss, and $15,000 work loss coverage.

Respondent asserts that petitioner is not entitled to stack the coverages, and that furthermore, he is not entitled to receive more than the $5,000 survivor's loss that has already been distributed.

Petitioner has presented into evidence the report of an actuary, David T. Bunin, F.S.A., who has classified the losses as a result of decedent's death as follows: (1) $1,549, representing past lost earnings; (2) $12,795, representing present value of future lost earning capacity (net); and (3) $67,269, representing lost household services.[3] Consequently, since the actuary has calculated total losses in the amount of $81,613, petitioner maintains that he should be awarded the full amount of the Keystone policies.

Neither petitioner nor respondent have made any argument as to the compensability of "replacement services losses," 40 P.S. Sec. 1009.202(c), under the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. Sec. 1009.101, et seq, (hereinafter No-fault Act). Rather, petitioner seeks compensation for "lost household services," terminology foreign to the No-fault act. Accordingly, we do not rule on petitioner's eligibility to recover "replacement services losses." Furthermore, as indicated below,

---

3. The court notes a discrepancy in regard to the calculation of alleged lost household services: In the November 30, 1979 Actuarial And Economic Report prepared by Mr. Bunin for petitioner's attorney , the present value of future lost services was calculated to be $69,584, bringing the total claim for lost household services to $74,026. However, in Mr. Bunin's March 24, 1980 deposition, he stated that "the present value of such services would be in the amount of $67,269." (page 20) For purposes of this opinion, and our calculation, we have used the latter figure, as it was presented at the time of oral testimony, as opposed to a written report, and was the figure more recently offered by petitioner's expert.

we find that "lost household services" are not compensable.

## DISCUSSION

a. Lost Household Services

It is evident from petitioner's oral deposition that the sum of $67,269 has been attributed to the loss of decedent's household services.[4] Petitioner has claimed this amount under the policy limitations of the two Keystone policies.

The question as to whether lost household services can be considered in the same category as wage loss is an issue of first impression in this Commonwealth. Our research has revealed no case involving this precise issue.

Referring to the No-fault act itself, we are provided with the following definitional guidelines:

"Section 103:

As used in this act:

'loss' means *accrued economic detriment* resulting from injury . . . consisting of, and limited to, allowable expense, work loss, replacement service loss, and survivor's loss.

'loss of income' means gross income actually lost by the victim . . .

'work loss' means:

(A) loss of gross income . . ." (Emphasis supplied.)

There is no provision in the No-fault act that either explicitly or impliedly authorizes recovery

_____

4. Petitioner, in his deposition, at page 46, states that decedent did the cooking and cleaning for the household. This was reiterated by Mr. Bunin, at the time of his deposition, wherein he explained that decedent provided all household services (page 19).

for "lost household services." The act specifically restricts recovery to "accrued economic detriment," and "loss of income" is defined as "income actually lost." Since decedent had been providing her family with household services, gratuitously, there could be no "accrued economic detriment," and no "loss of income."[5] Had the legislature intended for this loss to be covered within the No-fault act, it would have been referred to in the act.[6] Accordingly, we find that petitioner is not entitled to recover the $67,269, under the work loss provisions of the two policies.[7]

---

5. The No-fault act's failure to authorize recovery for lost household services leads this court, as well as individuals familiar with the act's provisions, to conclude that a housewife, or one surviving a deceased housewife, is not entitled to work loss benefits for the inability to perform household chores. See The Pennsylvania No-fault Motor Vehicle Insurance Act, David S. Shrager, editor, page 89, where the act is interpreted as providing that a housewife who works only during Christmas is only entitled to work loss benefits to the extent of her seasonal employment. Impliedly, loss of gratuitious household services is not compensable.

6. It is well-established that "when the words of a statute are clear and free from all abiguity, the letter of it is not to be disregarded." Daughtery v. Continental Can Company, 226 Pa. Superior Ct. 342, 313 A. 2d 276 (1973). Thus, as the No-fault explicitly sets forth those losses that are compensable, guided by caselaw and The Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. §1501, et seq, we conclude that as "lost household services" are not included as a basic loss benefit, it is not compensable.

7. As stated earlier in the main text of this opinion, petitioner has not advanced any argument concerning an entitlement to "replacement services losses," 40 P.S. Sec. 1009.202(c), and consequently, we will not discuss what, if any, relevance this provision has in this case.

(b)  Recoverable Survivor's and Work Loss Benefits

The No-fault act, in section 103, defines survivor's loss as follows:

"(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; . . . reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury."[8]

Thus, the computation of survivor's loss must include a deduction of the expenses the survivor saved as a result of the death.

In applying the above, we find the following information pertinent: Although petitoner testified that decedent was earning $80 weekly at the time of her death, the only evidence submitted to establish this loss was a W-2 form reflecting decedent's income in 1978 as $1,440. (Bunin deposition, page

---

8.  This court finds it unnecessary to deal extensively with the threshold issue of whether petitioner-husband qualifies as a "survivor." Suffice it to say that "the words of the Act itself, by definition in Section 103, create a presumption of [the necessary] dependency of the spouse by stating in subsection (A) that a "survivor" is a spouse; or, in subsection (B), a child, parent, brother, sister or relative dependent upon decedent for support. Thus, the spouse need not prove dependency." The Pennsylvania No-fault Motor Vehicle Insurance Act, David S. Shrager, editor, pages 99-100. See also, Wercoch v. Liberty Mutual Insurance Company, October 1979, No. 1319 (Opinion filed May 15, 1981) wherein the Superior Court agreed with the lower court's conclusion that "a spouse was not required to present any evidence of dependency in order to qualify as a survivor . . ." pg. 6.

20) Decedent had begun working in June or July of 1978, (Parker deposition, page 25), and thus could have worked no more than 31 weeks of that year. Dividing $1,440 by 31 weeks indicates an average weekly wage of $46.45, and a yearly income of $2,415.40.

Petitioner's actuary testified that decedent would be presumed to consume 56 percent of her income (Bunin deposition, page 12), that amount equaling $1,352.62. Thus, the amount remaining, on a yearly basis, that could have been contributed to the survivors is $1,062.78.

Petitioner testified that decedent had intended to work only until such time as she attained the age of 62 years. (Parker deposition, page 48). Hence, decedent would have worked a maximum of three years, and over that period of time could have contributed $3,188.34 to survivors. As this amount is less than the $5,000 survivor's loss payments already tendered to petitioner by respondent-insurance carrier, and in light of caselaw establishing that a plaintiff cannot recover more than the actual damages, State Farm Automobile Insurance v. Williams, 481 Pa. 101, 392 A. 2d 281, 286 (1978), petitioner has been fully and completely compensated under the survivor's loss provision of the No-fault act. See also Marchese v. Aetna Casualty and Surety Company, 284 Pa. Superior Ct. 579, 426 A. 2d 646 (1981).

Petitioner asserts entitlement to basic work loss benefits of $30,000, an amount representing the $15,000 maximum recovery of each of the two policies issued by respondent-insurance company. Respondent does not argue that petitioner lacks any entitlement to work loss benefits, but rather, takes exception to the monetary demand set forth by petitioner. Keystone contends that the amount

owing to petitioner, for work loss, totals $7,246.20,[9] recoverable under one policy, and thus the court need not reach the question of stacking. We agree with respondent.

This court postponed the issuance of the present opinion, awaiting the Pennsylvania Supreme Court's decision in Allstate Insurance Company v. Heffner, 491 Pa. Ct. 447, 421 A. 2d 629 (1980). Therein, the court held that under the No-fault act, survivors of a person fatally injured in an automobile accident are entitled to both survivor's loss and work loss benefits, despite the possibility of any resulting overlapping coverage. Thus, Allstate Insurance Company v. Heffner, supra, does provide a general basis for petitioner's claims for work loss benefits; however, it does not catapult petitioner over the hurdles of pre-existing caselaw that established that an insured cannot recover an amount in proceeds in excess of actual damages: State Farm Mutual Automobile Insurance Company v. Williams, supra, 392 A. 2d 281 at 286; quoting from Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A. 2d 112 (1968). See also, Celina Mutual Insurance Co. v. Knauff, 65 D. & C. 2d 692 (1974).

"We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss. . . . We do hold,

---

9. This figure is arrived at by performing the following calculations: Accepting the fact that decedent had been earning $46.45 weekly, her total yearly income would have been $2,415.40 (probable annual income). Multiplying this figure by 3 years, (remaining work expectancy), results in a wage loss of $7,246.20.

however, as did the court in Sellers [v. U.S.F.&G. Co., Fla., 185 So. 2d 689 (1966)] that where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss."

In light of the above, petitioner is entitled to recover only an amount equal to decedent's actual work loss, $7,246.20. As this amount does not exceed the proceed limits of one policy, it is not necessary for us to consider the issue of whether or not stacking is permissible under the presented circumstances.

c. Respondent's Counterclaim

Respondent-insurance carrier maintains that petitioner's claim for No-fault benefits lacks a reasonable foundation. Furthermore, respondent asserts that the claim is excessive, and thus entitles said insurance carrier to counsel fees and costs. We disagree.

Respondent's assertion of an entitlement to attorney's fees and costs is akin to a demand by an insured for same. See 40 P.S. §1009.107(3). That section provides:

"(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

"The forementioned provision clearly evidences the Legislature's intention to allow the recovery of attorney's fees [and costs], in No-fault actions only

where there is a showing of the obligor's bad faith denial of a claim." Haegele v. Pennsylvania General Insurance Company, no. 1745, February term 1980 (C. P. Philadelphia County filed April 2, 1981), pgs. 10-11. See also, Hayes v. Erie Insurance Exchange, 261 Pa. Superior Ct. 171, 395 A. 2d 1370 (1978), rev'd 493 Pa. 150, 425 A. 2d 419 (1981).

Applying the legislative intent, as evidenced by 40 P.S. § 1009.107(3), and such caselaw as above cited, this court finds that in order for respondent to qualify for an entitlement to attorney's fees and costs, based on a lack of "reasonable foundation" for petitioner's claim for No-fault benefits, respondent must prove petitioner's "bad faith." As there is no convincing evidence of same, we dismiss said counterclaim.

## CONCLUSION

Accordingly, consistent with this opinion, we enter an order granting petitioner additional No-fault benefits, and we dismiss the counterclaim.

## ORDER

And now, July 9, 1981, the petition for No-fault benefits is granted in part, and respondent, Keystone Insurance Company, is ordered to pay petitioner $7,246.20, representing work loss benefits, within 30 days of the date of this order. In addition, respondent is to pay petitioner interest on $7,246.20 at 18 percent per annum, calculated from June 11, 1979, until such sum is paid. In all other respects, petitioner's petition is denied.

It is further ordered that respondent's counterclaim be dismissed.