City of Philadelphia, Appellant *v.* Nationwide Insurance Company, Appellee.

Nationwide Insurance Company, Appellant *v.* City of Philadelphia, Appellee.

Argued June 7, 1985, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Barbara R. Axelrod,* Deputy City Solicitor, with her, *Barbara W. Mather,* City Solicitor, for appellant/appellee, City of Philadelphia.

*Robert Keller,* for appellee/appellant, Nationwide Insurance Company.

OPINION BY SENIOR JUDGE BARBIERI, September 17, 1985:

This is a consolidated action whereby both the City of Philadelphia (City) and Nationwide Insurance Com-

pany (Nationwide) appeal here an order of the Court of Common Pleas of Philadelphia County. That order required the City to pay to Nationwide the sum of $25,000 as full reimbursement for No-Fault basic loss benefits which Nationwide paid to an injured pedestrian as a result of an accident which took place between a City police vehicle and a vehicle insured by Nationwide.

This dispute between the City and Nationwide stems from a motor vehicle accident which occurred on December 21, 1979 at the corner of 58th and Vine Streets in Philadelphia. Nationwide's insured was driving in a northerly direction on 58th Street when it collided with a police car, owned and operated by the City, which was proceeding in an easterly direction on Vine Street. The collision caused the vehicle operated by Nationwide's insured to spin whereupon it struck and seriously injured a pedestrian, Evelyn Hunte, who was standing on the northeast corner of the intersection. On March 3, 1983, a court-approved settlement of the personal injury actions brought as a result of this accident provided for the City to pay to Hunte the sum of $450,000 and to the occupants of the vehicle insured by Nationwide the sum of $25,000. In addition, Nationwide was to pay $3,000 to satisfy the claims of the occupants of the vehicle of its insured.

Hunte had also filed a claim for basic loss benefits under the Pennsylvania No-Fault Motor Vehicle Insurance Act (Act).[1] Nationwide paid a total of $78,-

---

[1] Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. §§1009.101-1009.701, repealed by the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, P.L. 26, 75 Pa. C. S. §§1701-1798.

Basic loss benefits are defined by Section 103 of the No-Fault Act, former 40 P.S. §1009.103, as the net loss sustained by a victim, subject to any applicable limitations, exclusions, deductibles, wait-

758.07 to her as basic loss benefits under the No-Fault Act. In 1981, Nationwide sued the City to recover what it contended was the City's pro rata share of Hunte's basic loss benefits. The City contended that under the provisions of the Political Subdivision Tort Claims Act (Tort Claims Act),[2] the nongovernment insurer was the primary source of No-Fault basic loss benefits and that it was not liable to Nationwide for contribution. On April 28, 1983, the common pleas court ordered the City to reimburse Nationwide $25,-000 as its share of Hunte's basic loss benefits. The common pleas court reasoned that since the City could be required to pay not more than $500,000 for damages resulting from liability under the Tort Claims Act, Nationwide was only entitled to $25,000 since the City had already paid out $475,000 resulting from claims from the December 21, 1979 accident. Both the City and Nationwide filed exceptions to that order which were denied by the common pleas court on December 1, 1983 and appeal to this Court followed.

In this appeal, the City contends that the common pleas court erred in finding it liable for *any* portion of basic loss benefits due Hunte under the No-Fault Act as the Tort Claims Act makes the nongovernment insurer the primary source of no-fault benefits. Na-

---

ing periods, disqualifications, or other terms and conditions provided or authorized in accordance with this act. Basis loss benefits do not include damage to property. Nor do basic loss benefits include benefits for net loss sustained by an operator or passenger of a motorcycle. Section 202 of the No-Fault Act, former 40 P.S. §1009-.202, limits work loss benefits to a maximum of $15,000 and replacement services loss to a maximum of $25 per day for an aggregate period of one year.

[2] Act of November 26, 1978, P.L. 1399, *formerly* 53 P.S. §§5311.101-5311.803. repealed by the Act of October 5, 1980, P.L. 693. The Tort Claims Act was substantially reenacted by the General Assembly as Subchapter C of Chapter 85 of the Judicial Code, 42 Pa. C. S. §§8541-8564.

tionwide contends that the common pleas court erred in applying the $500,000 limitation of Section 405 of the Tort Claims Act (repealed), *formerly* 53 P.S. §5311.405, to the City's obligation to contribute to Hunte's No-Fault basic loss benefits. Of course, our scope of review, where the common pleas court is the fact finder, is limited to determining whether that court abused its discretion or committed an error of law. *Fincher v. Middlesex Township*, 64 Pa. Commonwealth Ct. 355, 439 A.2d 1353 (1982).

We shall examine first the City's contention that the Tort Claims Act, which subjects it to liability for damages resulting from motor vehicle accidents,[3] makes the nongovernment insurer of a vehicle involved in a collision with a City vehicle the primary source of no-fault basic loss benefits to uninsured pedestrians. As the City and Nationwide are not obligors of equal status, the City's contention goes, Nationwide cannot look to it for contribution for basic loss benefits which it paid to the uninsured pedestrian. *See Harleysville Insurance Co. v. Traveler's Insurance Co.*, 27 Pa. D. & C. 3d 452, 454 (C.P. Phila. 1983) (insurer of vehicle involved in accident is primarily liable for payment of no-fault benefits to uninsured pedestrian and is not equal in status to assigned claims obligor and is entitled to no contribution from the assigned claims obligor). We think that the City's reliance upon the Tort Claims Act is misplaced.

Section 104(a) of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.104(a), reads, in pertinent part, as follows:

> *(a) Security covering a motor vehicle.—*
> Every owner of a motor vehicle which is regis-

---

[3] *See* Section 202 of the Tort Claims Act (repealed), *formerly* 53 P.S. §5311.202. This provision is now found at 42 Pa. C. S. §8542 (b) (1).

tered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. Security shall be provided for the payment of basic loss benefits, . . . . The owner or any other person may provide security covering a motor vehicle by a contract of insurance with an insurer or by qualifying as a self-insurer *or as an obligated government.* (Emphasis added.)

The clear intent of the General Assembly contained in Section 104(a) is to require that every motor vehicle registered or operated within the Commonwealth be secured for the payment of basic loss and bodily injury claims resulting from motor vehicle accidents. There is no exemption made by the General Assembly for government-owned vehicles from the requirement to provide security. To the contrary, the provision which permits a government to provide security by being an "obligated government" rather than purchasing a contract of insurance evidences a clear intent on the part of the General Assembly to specifically include government-owned vehicles within the scope of the No-Fault Act. The Commonwealth government itself is an "obligated government" under the No-Fault Act. *Szanca v. Umer,* 508 F. Supp. 450 (W.D. Pa. 1980). Likewise, the City is also an "obligated government" under Section 104 of the No-Fault Act and liable for the payment of basic loss benefits where applicable.

The Tort Claims Act, in comparison, is designed to immunize local governments and agencies from liability for damages resulting from the acts or omissions of those agencies, their officers or employees. The

Tort Claims Act was specifically enacted by the General Assembly in response to the abolition by the Pennsylvania Supreme Court of the doctrine of governmental immunity in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), and provided a procedure whereby tort claims could be instituted against municipalities where the actions giving rise to the damage claims fit within one of the specified exceptions to governmental immunity. Damages resulting from motor vehicle accidents is one of the specific exceptions to governmental immunity.[4] Therefore, under the Tort Claims Act, the City was placed on the same footing as all other persons regarding damage suits resulting from motor vehicle accidents with the exception of the $500,000 limit on damages recoverable from a municipality.[5] Likewise, the City could avail itself of the partial abolition of tort liability contained in the No-Fault Act.[6] Despite the City's contention to the contrary, there are no irreconcilable conflicts between the Tort Claims Act and the No-Fault Act and we are able to construe both statutes to give full effect to both.

Having found that the City is obligated under the No-Fault Act to pay basic loss benefits under appropriate circumstances, we must now determine whether the City was obligated here to pay no-fault basic loss benefits to Hunte and, if so, whether the City and Nationwide are obligors of equal status so that Nationwide is entitled to contribution from the City for such benefits which it already paid. There is no dispute that Hunte was an uninsured person in that she

---

[4] n.3, *supra*.

[5] *See* Sections 401-405 of the Tort Claims Act (repealed), *formerly* 53 P.S. §§5311.401-5311.405. These provisions were substantially reenacted in 1980 and appear at 42 Pa. C. S. §8553.

[6] *See* Section 301 of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.301.

was neither involved in the accident as a driver or passenger of a covered motor vehicle nor did she or anyone else in her household own a motor vehicle which was required to be secured under the No-Fault Act. Therefore, under Section 204(a)(4) of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.204(a)(4), the security for the payment of her basic loss benefits is the security covering *any* motor vehicle involved in the accident. Nationwide is admittedly the security covering the vehicle driven by its insured. Section 104(a) of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.104(a). The City, as an "obligated government," is the security for the motor vehicle it owned and which was driven by its employee. Section 104(b) & (c) of the No-Fault Act (repealed), *formerly* 40 P.S. §§1009.104(b) & (c). Therefore, the City and Nationwide are basic loss benefit obligors of equal status under former 40 P.S. §1009.204(a)(4) with respect to Hunte and Nationwide is entitled to contribution from the City for those benefits which it paid to Hunte.

The City, however, argues that since Nationwide voluntarily paid Hunte's basic loss benefit claim, it somehow waived its right, if any, to claim contribution for those costs from the City. This contention is without merit. Section 204(b) of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.204(b), mandates that where two or more obligors of equal status under Section 204(a) are obligated to pay basic loss benefits, the obligor against whom the claim is first presented shall process and pay the claim *as if solely responsible.* After paying the claim, that obligor *shall be entitled* to recover pro rata contribution for basic loss benefits paid and the costs of processing the claim from the other obligors. Where the claim involves an uninsured person and the obligors are of equal status un-

der Section 204(a)(4), Section 204(b) mandates that the contribution of the obligors be prorated based upon the number of vehicles involved. *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa. Superior Ct. 497, 464 A.2d 431 (1983). As there were only two vehicles involved in the accident, Nationwide and the City are each responsible for one-half of the basic loss benefits payable to Hunte and one-half of the costs of processing her basic loss benefit claim.

We shall now turn to Nationwide's contention that the common pleas court erred in holding that the City's liability for contribution for no-fault basic loss benefits was limited by Section 402 of the Tort Claims Act (repealed), *formerly* 53 P.S. §5311.402, to $25,000. The common pleas court found that the City's total liability under former 53 P.S. §5311.402 could not exceed $500,000 and since it had already paid out $450,000 to Hunte and $25,000 to the occupants of the motor vehicle insured by Nationwide, the limit of the City's contribution for basic loss benefits under former 40 P.S. §1009.204(b) was $25,000. We agree.

The Tort Claims Act was enacted by the General Assembly to provide a method by which certain tort claims could be presented against municipalities. Within the specific statutory exceptions to governmental immunity, municipalities could be held liable for damages resulting from their negligence up to $500,000. Former 53 P.S. §5311.402 reads as follows:

> Damages arising from the same cause of action or transaction or occurrence or series of occurrences shall not exceed $500,000 in the aggregate.

This provision is now found at Section 8553(a) of the Judicial Code, 42 Pa. C. S. §8553(b). The clear intent of the General Assembly was that municipalities were to be placed upon the same footing as other persons

with regard to liability resulting from certain acts up to a maximum liability of $500,000 per incident or series of incidents. Therefore, the *maximum* amount the City could be required to pay in damages to Hunte and the occupants of the car driven by Nationwide's insured is $500,000.

Section 405 of the Tort Claims Act (repealed), *formerly* 53 P.S. §5311.405, provides that insurance benefits for losses otherwise recoverable as damages under Section 403 of the Tort Claims Act (repealed), *formerly* 53 P.S. §5311.403, are to be deducted from the damages the claimant would otherwise be entitled to recover. This provision is currently found at Section 8553(d) of the Judicial Code, 42 Pa. C. S. §8553. Damages recoverable under former 53 P.S. §5311.403 include a number of losses for which coverage is provided by no-fault basic loss benefits. Such losses include lost wages, costs for replacement services and medical expenses, for example.

It is Nationwide's contention that since such losses are not recoverable as "damages" under the Tort Claims Act, no-fault basic loss benefits are not subject to the $500,000 limitation contained in former 53 P.S. §5311.402. Simply put, Nationwide argues that since an injured motorist cannot recover such losses under the Tort Claims Act, they do not constitute "damages" under the Tort Claims Act and are not, therefore, subject to the $500,000 limitation of liability on the part of the City as that limitation only places a maximum amount on the "damages" recoverable against a municipality under the Tort Claims Act. We disagree. It is clear from the plain wording of former 53 P.S. §5311.402 that the General Assembly intended that claimants only recover from municipalities damages for those losses for which insurance benefits were not available. *See Savitt.*

The No-Fault Act was designed to meet a very specific problem, that of promptly and adequately compensating losses resulting from motor vehicle accidents. The basic loss benefit provision of the No-Fault Act was to ensure that victims of motor vehicle accidents are compensated for certain enumerated losses arising from such accidents without having to prove another party was at fault. The presence of basic loss benefits under the No-Fault Act goes along with the partial abolition of tort liability for automobile accidents which the No-Fault Act also provided. The mere fact that the General Assembly had chosen to ensure the payment of certain losses arising from motor vehicle accidents without the necessity of resorting to a tort action does not change the characterization of those losses as "damages."

Our Supreme Court has defined "damages" as reasonable compensation for a legal injury and are awarded as compensation for a loss or injury suffered. *Sechrist v. Bowman,* 307 Pa. 301, 161 A. 332 (1932); *see also Holmes Electric Protective Co. of Philadelphia v. Goldstein,* 147 Pa. Superior Ct. 506, 24 A.2d 161 (1942). Lost wages, medical expenses and the costs of replacement services have been traditionally considered as "damages" under Pennsylvania law. *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960) (lost earnings); *Discovich v. Chestnut Ridge Transportation Co.,* 369 Pa. 228, 85 A.2d 122 (1952) (medical expenses); *Willis v. Second Avenue Traction Co.,* 189 Pa. 430, 42 A. 1 (1899) (expenses of servant). What the No-Fault Act had done was to take those traditional tort damage elements out of the tort field and make them compensable without regard to fault. That does not change the essential character of those losses as damages for which the City would be otherwise liable had it not been for no-fault basic loss bene-

fits. Therefore, since those items which are covered by the basic loss provisions of the No-Fault Act would be otherwise recoverable as "damages" under the Tort Claims Act, but for the availability of basic loss benefits, the Tort Claims Act's limitation of liability is fully applicable and the City's liability for damages *and* no-fault basic loss benefits cannot exceed $500,-000. In that the City has already paid $450,000 to Hunte in settlement of her civil action and $25,000 to the occupants of the vehicle driven by Nationwide's insured, the only remaining liability which the City has under the Tort Claims Act to *anyone* as a result of the accident of December 21, 1979 is $25,000.[7] Therefore, the common pleas court was correct when it limited the City's contribution to Hunte's no-fault basic loss benefits to that sum.

Having found that the City's total remaining liability to all parties involved in the December 21, 1979 accident was $25,000, we need not address Nationwide's claim for an award of counsel fees under Section 107 of the No-Fault Act (repealed), *formerly* 40 P.S. §1009.107.[8] The $25,000 contribution by the City

[7] We also note that since Hunte had received a total of $78,-758.07 in no-fault basic loss benefits from Nationwide as a result of this accident, the City would have been entitled to an offset in that amount with regard to the damages to which Hunte was entitled under the Tort Claims Act. *See* former 53 P.S. §5311.405. In that the City has not raised this issue, we express no opinion thereon other than to note the possibility that Hunte may have been compensated by *both* the City and Nationwide for the losses covered by no-fault basic loss benefits.

[8] While Section 107 speaks only of an award of attorney's fees to a non-fault claimant, case law indicates that under appropriate circumstances, no-fault obligors may be entitled to attorney's fee awards. *See McKenzie v. Nationwide Insurance Company*, 23 Pa. D. & C. 3d 469 (C. P. Somerset 1981); *Parker v. Keystone Insurance Company*, 21 Pa. D. & C. 3d 617 (C. P. Phila. 1981). However, in order to be entitled to an award of attorney's fees, the obligor

32

to reimburse Nationwide for basic loss benefits paid to Hunte is in full and complete satisfaction of all past and future basic loss benefits to which Hunte may be entitled as well as costs of processing her claim and costs incurred by Nationwide in collecting the City's contribution. We shall, therefore, affirm the order of the common pleas court.

### ORDER

Now, September 17, 1985, the order of the Court of Common Pleas of Philadelphia County at Docket No. 243, April Term 1981, dated December 1, 1983, which denied the exceptions of Nationwide Insurance Company to that Court's order of April 28, 1983, is hereby affirmed.

Judge BARRY did not participate in the decision in this opinion.

---

must provide the common pleas court with an accounting of actual time expended in prosecuting the matter so that a reasonable hourly rate can be applied to arrive at the amount to which the obligor is entitled under Section 107. *See Danks v. Government Employees Insurance Company*, 307 Pa. Superior Ct. 421, 453 A.2d 655 (1982).