David WILLIAMS and Susan Williams, Plaintiffs,

v.

HARTFORD CASUALTY INSURANCE COMPANY, Defendant.

No. CIV.A. 99–1732.

United States District Court, E.D. Pennsylvania.

Feb. 22, 2000.

Ivan J. Feiner, Coco, Feiner & Citron, P.C., Philadelphia, PA, Joseph F. Roda, Roda & Nast, P.C., Michele S. Eagan, Roda & Nast, Lancaster, PA, for David Williams, Susan Williams, Plaintiffs.

Thomas J. Duffy, Eileen C. MC Ginley, Duffy and Quinn, Thomas J. Duffy, Eileen C. MC Ginley, Duffy and Quinn, Philadelphia, PA, for ITT Hartford, Hartford Casualty Insurance Company, Defendant.

## *MEMORANDUM AND ORDER*

KATZ, Senior District Judge.

Plaintiffs David and Susan Williams bring this action against defendant Hartford Casualty Insurance Company, alleging bad faith in its handling of their claim for underinsured motorist (UIM) benefits. Now before the court is Hartford's motion for summary judgment. Because there is no clear and convincing evidence by which a reasonable jury could find bad faith, the motion will be granted.

## I. Background [1]

In May 1996, plaintiff David Williams, a West Goshen Township police officer, was involved in an automobile accident while on duty. Mr. Williams suffered injuries including a brachial plexus stretch injury to his left shoulder and arm,[2] injury to his right eye, a spinal cord contusion, and imbedded glass near the ulnar nerve of his left arm, which required two surgeries. As a result of the accident, Mr. Williams also developed reflex sympathetic dystrophy on his left side,[3] memory loss, and depression. His injuries rendered him unable to return to work as a police officer, although after the accident, Mr. Williams was able to complete the few remaining credits necessary for his undergraduate degree and, in September 1997, to enroll as a full-time student at Widener University School of Law. His first semester grades at Widener were poor and he took a medical leave of absence from law school in February 1998. As of September of last year, Mr. Williams intended to return to school for the spring 2000 semester.

The liability of the driver who struck Mr. Williams' car was not in question and the tortfeasor's insurance company settled Mr. Williams' claim for the policy limit of $25,000 in September 1996.

The plaintiffs had UIM insurance with Travelers/Aetna Insurance Co. (Travelers), their personal automobile insurer. West Goshen Township also had UIM coverage with Hartford. The limit of the Travelers' policy was $300,000, and the limit of the Hartford policy was $1,000,000. Plaintiffs notified West Goshen of their intent to claim [4] under its UIM policy on December 18, 1996, and Hartford received notice of the claim on January 7, 1997.

Beginning in January 1997, Hartford regularly received Mr. Williams' medical records from plaintiffs' lawyer, Ivan Feiner. As early as February 1997, Feiner indicated that his clients were seeking the policy limit from Hartford. *See* Def. Ex. 6 (Feb. 6, 1997 Mem. from Lee Abel, Hartford, to Carol Luiz, Hartford).[5] On March 19, 1997, he sent a written demand to both insurers for the combined policy limit of $1,300,000. Neither insurer countered with an offer and plaintiffs demanded arbitration in April 1997.

From approximately February 1997, Hartford apparently believed that there was a question of whether the Hartford or Traveler's policy was the primary insurer—that is there was a question regarding which policy the plaintiffs would have to exhaust first before collecting on the second policy.[6] In June 1997, Lee Abel, a

---

1. All background facts are drawn from the submissions and exhibits of the plaintiffs, unless otherwise indicated.

2. A brachial plexis stretch injury results when nerve trunks under the armpit are damaged due to stretching or pulling. It results in "neuropathic pain," in which the damaged nerves will fire and create pain spontaneously, without any environmental stimulus. *See* Pl.Ex. 12 at 12–13 (Dep. of Dr. Mitchell Cohen).

3. Reflex sympathetic dystrophy (RSD), also known as complex regional pain syndrome, is a post-traumatic syndrome that can evolve from a brachial stretch. It is also "a condition of spontaneous pain in the absence of noxious or damage linked stimuli which usually produce pain." Pl.Ex. 12 at 13–14.

4. In addition to Mr. Williams' claim, Mrs. Williams had a claim for loss of consortium.

5. All references are to the exhibits attached to the defendant's motion for summary judgment unless otherwise indicated.

6. While Hartford contends that the question of priority of coverage was not raised until the end of June 1997, the record is ambiguous. *See* Pl.Ex. 33, entry of Feb. 5, 1997 (claims log) ("The current case law of *Warner v. Continental* provides the host vehicle is primary UIM; however this case is under appeal. Since this results of the appeal are so germane to this case we would not effect settlement until the appeal is resolved."). *But see* Pl.Ex. 44 (April 25, 1997 Ltr. from Feiner to Travelers and Hartford) ("It is my understanding that Hartford will be taking the lead with respect to the above captioned matter."). Since all reasonable inferences are to be drawn in favor of the non-movant, the court will assume for the purposes of this motion that Hartford considered question of priority

Hartford adjuster, informed Feiner by letter that Hartford's policy was in excess to Travelers' policy. Hartford also appointed its arbitrator in June. In August 1997, Hartford reversed its position regarding the priority of coverage when its counsel, Harold Viletto, conceded that Hartford's policy was primary. Mr. Williams' deposition was taken in September 1997. In October, Hartford sought an authorization from Mr. Williams for the release of his West Goshen Township workers' compensation and employment files. After the neutral arbitrator was selected in October 1997, the arbitration was scheduled for February 1998. *See* Def. Reply, Ex. 25 (Nov. 24, 1997 Ltr. from Anthony J. Frayne, neutral arbitrator, to Feiner, et al.).

In November, Hartford sought medical records directly from Mr. Williams' providers when Viletto sent subpoenas to the neutral arbitrator for execution. When several of Mr. Williams' providers failed to respond to the subpoenas, Viletto then requested authorizations for release of medical records from Mr. Williams in January 1998. An independent medical examination (IME) of Mr. Williams was also performed in January. In February, just prior to the initial arbitration date and prompted by Mr. Williams' withdrawal from law school, Hartford requested a continuance so that their expert could conduct a vocational assessment. The arbitration

was rescheduled for April 1998, and Mr. Williams underwent the vocational assessment in March 1998.

Plaintiffs renewed their demand for Hartford's policy limit in February 1998, after Feiner reviewed the report of the IME. *See* Def. Ex. 41 (Feb. 12, 1998 Ltr. from Feiner to Viletto). At no time did plaintiffs offer to settle for less than Hartford's policy limit of $1,000,000. *See* Def. Ex. 47 (Pl. Resp. to Def's Requests for Admission (Set 1)).

Hartford's initial offer of $500,000 was made six days before the April arbitration. After plaintiffs refused, Hartford increased its offer to $650,000. It is unclear whether Feiner informed the plaintiffs of this new offer, *see* Def. Ex. 23 at 31–33 (Dep. of Feiner); in any event, plaintiffs did not accept and the arbitration preceded. The arbitration resulted in an award of $900,000 to the plaintiffs—$600,000 to Mr. Williams and $300,000 to Mrs. Williams. Plaintiffs subsequently filed this action against Hartford, alleging that its handling of their claim was in bad faith.

## II. Discussion [7]

### A Standards

In Pennsylvania, an insured may bring a cause of action against an insurer who has acted in bad faith. *See* 42 Pa.C.S. § 8371.[8] Bad faith has been defined as

---

of coverage to be an issue as of February 1997.

**7.** Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from such evidence in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, summary judgment is to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

**8.** The statute provides that if an insurer is found to be in bad faith, the court may award interest on the amount of the claim from the date the claim was made, award punitive damages against the insurer, and assess court costs and attorney fees against the insurer. *See* 42 Pa.C.S. § 8371.

any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Property and Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994).

In order to recover on a bad faith claim, a plaintiff must show both "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis" *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997) (citing *Terletsky,* 649 A.2d at 688). Mere negligence on the part of insurer is insufficient to sustain a bad faith claim. *See Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747, 751 (3d Cir.1994).

Pennsylvania requires that an insurer act with the utmost good faith toward its insured, *see Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994), and it should "accord the interests of its insured the same faithful consideration it gives its own interest." *See Cowden v. Aetna Cas. and Surety Co.,* 389 Pa. 459, 134 A.2d 223, 228 (1957). However, an insurer is not required actively to submerge its own interest. *See Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 588 (E.D.Pa.1999).

The plaintiff must establish bad faith by clear and convincing evidence. *See Polselli,* 23 F.3d at 750. Accordingly, in opposing a summary judgment motion, the plaintiff's burden of proof also rises to the clear and convincing standard. *See McCabe v. State Farm Mut. Auto. Ins. Co.,* 36 F.Supp.2d 666, 669 (E.D.Pa.1999). In sum, in order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by "the stringent level of clear and convincing evidence," *Jung v. Nationwide Mut. Fire Ins. Co.,* 949 F.Supp. 353, 356 (E.D.Pa.1997), that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness.

**B. Plaintiffs' Allegations of Bad Faith**

Plaintiffs make the following allegations of bad faith: that Hartford delayed its investigation of plaintiffs' claim for approximately fifteen months; that Hartford unreasonably claimed that its UIM policy was in excess to the Travelers' policy when applicable case and statutory law, as well as Hartford's own policy, clearly indicated that Hartford was primary; that Hartford delayed its first settlement offer until six days prior to arbitration and then made an unreasonably low settlement offer; that Hartford violated applicable Pennsylvania statutes and regulations in the handling of plaintiffs' claim; and that overall, Hartford's handling of the claim indicates that it was motivated by a desire to pay as little on the claim as possible, rather than a fair and objective sum. The court will address each of these contentions in turn.

**1. Delay of the Investigation**

Plaintiffs allege that Hartford acted in bad faith by taking approximately fifteen months to resolve their claim. They do not contend that Hartford was unreasonable in taking Mr. Williams' deposition or in requiring an IME and a vocational assessment; rather they argue that Hartford took an unreasonable length of time to complete these tasks. For example, although Hartford had notice of the claim in January 1997, the deposition was not taken until nine months later, the IME was not performed until a year after notice of the claim, and the vocational assessment was not performed until fourteen months after notice of the claim. Plaintiffs also contend that Hartford took an unreasonable length of time to request Mr.

Williams' medical records and workers' compensation and personnel files. Plaintiffs assert that because Hartford knew that it needed to complete each of these steps well before it actually undertook them, it acted in bad faith.

■ While plaintiffs are correct that Hartford could have completed its investigation with greater speed, the simple fact that it failed to do so does not amount to clear and convincing evidence by which a jury could conclude that Hartford acted in bad faith. Delay may be a relevant factor in determining whether an insurer has acted in bad faith. *See Kosierowski,* 51 F.Supp.2d at 589. However, a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith. *See id.* The primary consideration is "the degree to which a defendant insurer *knew* it had no basis to deny the claimant: if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Id.* (citing *Klinger,* 115 F.3d at 234); *see also Quaciari v. Allstate Ins. Co.,* 998 F.Supp. 578, 582–83 (E.D.Pa.), *aff'd without opinion,* 172 F.3d 860 (3d Cir.1998) (holding that even if all delay were attributable to the insurer, a period of approximately thirteen months between notification of UIM claim and resolution of the claim through arbitration would not, without more, be sufficient to establish bad faith).

Plaintiffs have not demonstrated that by failing to act more promptly, Hartford recklessly disregarded the unreasonableness of its actions. As the court will discusses in greater detail, while liability was clear, the value of plaintiffs' claim was not, and therefore Hartford acted reasonably in undertaking an investigation of the claim.

Plaintiffs' argument does not recognize that a delay caused by the failure to undertake necessary tasks and a delay

caused by the failure to settle the claim when the value of the claim is clear are not equivalent. The former, without more, is not bad faith, while the latter may be bad faith. Such a distinction is highlighted by a comparison of the delays addressed in *Quaciari* and *Klinger.* In *Quaciari,* the court held that even if all delay was attributable to the insurer, the thirteen months between notice of the claim and settlement by arbitration did not, on its own, constitute bad faith since the claim required further investigation by the insurer.[9] *See Quaciari,* 998 F.Supp. at 583; *see also Kosierowski,* 51 F.Supp.2d at 590 (finding that the "legitimate, if frustrating delays that are an ordinary part of legal and insurance work" do not constitute bad faith). In fact, the *Quaciari* investigation was conducted within a similar time frame as the period at issue here. *See Quaciari,* 998 F.Supp. at 580, 583 (noting that the plaintiff's statement under oath was not taken until approximately nine months after notice of the claim was given and the IME was not performed until eleven months after notice of the claim). In *Klinger,* the insurance company failed to settle even though it had all the information necessary to evaluate the plaintiffs' claims "months before" the claims were resolved by arbitration and even though its counsel recommended that it pay the policy limit before the arbitration. *See Klinger,* 115 F.3d at 232–33, 234. Here, the claim warranted further investigation by Hartford and the time Hartford took in completing each aspect of its investigation was not so lengthy that Hartford's actions amounted to recklessness.

In addition, the length of Hartford's investigation cannot be construed as an attempt to use economic pressure, such as lack of income and unpaid medical bills, to force a lower settlement. *See Jung,* 949 F.Supp. at 361 (noting that Pennsylvania's bad faith statute "is meant to dissuade an

---

9. While the court found that the delay in resolving the claim was equally attributable to both parties, it explicitly held that even if the

insured was without fault in causing any delay, there was no bad faith. *See Quaciari,* 998 F.Supp. at 583.

insurance company from using its economic power to coerce and mislead insureds"). During the pendency of the UIM claim against Hartford, Mr. Williams received benefits, apparently through workers' compensation and the Heart and Lung Act,[10] which paid his salary and his medical expenses. *See* Pl.Ex. 82 (Pl. Arbitration Mem. at 15).

Hartford could have completed its investigation of the plaintiffs' claim more promptly and, as it concedes, its dilatory pace may amount to negligence. *See* Def. Mem. at 27. The court recognizes at some point, a delay may become so great that it can no longer be ascribed to a simple need to investigate a claim, and therefore, may amount to bad faith. In this case, however, the fifteen months Hartford took to resolve the claim does not provide clear and convincing evidence for a reasonable jury to conclude that Hartford acted in bad faith.[11]

2. Coverage

Plaintiffs next argue that Hartford acted in bad faith by delaying its acknowledgment that its policy was primary and contending, for approximately one and a half months, that its policy was in excess to Travelers' policy. Plaintiffs argue that because Hartford's policy clearly had priority under section 1733 of the Motor Vehicle Financial Responsibility Law (MVFRL) and Hartford's own policy,[12] the insurers' delay resolving this issue could not be attributed to dispute over a legitimate issue of coverage. They also point to Hartford's delay in obtaining a copy of its policy as an example of its bad faith handling of this issue.

In its submissions to the court, Hartford attempts to minimize the impact of the priority of coverage issue. It contends that the question was not even raised until June 1997, and quickly resolved one and a half months later. *See* Def. Reply at 3. As already noted, the record reveals that at least internally, Hartford recognized as early as February 1996 that there may be an issue regarding which policy was primary and that this question was controlled by *Warner v. Continental/CNA Ins. Cos.*, 455 Pa.Super. 295, 688 A.2d 177, 183 (1996), allo. denied, 548 Pa. 660, 698 A.2d

---

**10.** The record indicates that Mr. Williams was drawing workers' compensation benefits, *see, e.g.,* Pl.Ex. 58 (Sept. 23, 1997 Ltr. from Abel to Sue Hoffman, Delaware Valley Workers' Compensation Trust) (anticipating that Trust will "set[ ] forth a substantial workers' compensation lien"), as well as benefits under the Heart and Lung Act (HLA), 53 P.S. §§ 637–38. The HLA provides salary and medical benefits for certain public employees, including police officers, who are temporarily injured in the performance of their duties. *See* 53 P.S. § 637(a). Under the HLA, these benefits are paid for by the employer, and employee must turn over any workers' compensation benefits collected to the employer. *See id.*

**11.** The parties dispute whether, as Hartford contends, the scope of the plaintiffs' damages changed significantly over the course of the investigation, thereby complicating and delaying resolution of the claim. However, this dispute does not raise a genuine issue of material fact because, even assuming that plaintiffs are correct that the scope of plaintiffs' damages did not change, the court finds that Hartford's investigation was concluded within a reasonable time frame.

Nor does plaintiffs' expert report, which concludes that Hartford was unreasonable and reckless in failing to complete its investigation more promptly, create a genuine issue of material fact. "The mere presence of an expert opinion supporting the non-moving party's position does not necessarily defeat a summary judgment motion; rather, there must be sufficient facts in the record to validate that opinion." *Kosierowski*, 51 F.Supp.2d at 595. The expert simply reiterates plaintiffs' position that because Hartford knew it needed to investigate the claim and did not do so sooner, it recklessly disregarded its unreasonable handling of the claim. *See* Pl.Ex. 88 at 18–20 (Expert Report of Barbara Sciotti). Because the court finds that, as a matter of law, the length of time it took Hartford to resolve the claim did not constitute bad faith, the report does not raise a genuine issue of material fact.

**12.** Both the MVFRL and Hartford's policy state that the coverage applicable to the vehicle the insured was occupying at the time of the accident has priority. *See* 75 Pa.C.S. § 1733; Pl.Ex. 31 at 3 (UIM Endorsement for Hartford Policy).

68 (1997). *See* Pl.Ex. 33, entry of Feb. 5, 1997; *see also* Pl.Ex. 8 (Dep. of Luiz) (stating that the delay in determining which carrier was primary was because "the law was in a state of flux. There was a case on appeal or there was a decision pending and I believe we were—my memory is a bit fuzzy on this, but I believe we were waiting for a decision to come out of Pennsylvania regarding this issue."). Hartford's apparent reliance on *Warner* regarding priority of coverage is puzzling since that question was only addressed in a footnote in the opinion which noted that the defendant's policy and section 1733 of the MVFRL established that the policy applicable to the vehicle the insured was occupying was primary. *See Warner*, 688 A.2d at 178 n. 1.

Hartford's argument that it was reasonable in contending that its policy was in excess to Travelers' due the Political Subdivision Tort Claims Act (PSTCA), is similarly unpersuasive. The PSTCA generally provides a procedure whereby a tort claim can be instituted against a municipality for actions that fit into one of the specified exceptions to governmental immunity. *See City of Philadelphia v. Nationwide Ins. Co.*, 92 Pa.Cmwlth. 20, 498 A.2d 462, 466 (1985). Section 8553(d),[13] the provision of the PSCTA cited by Abel, "gives local government a dollar-for-dollar set-off" for any amount paid by the injured party's insurance carrier to its insured. *Kriner v. Barbour*, 145 Pa.Cmwlth. 64, 602 A.2d 450, 452 (1992). Apparently, Hartford's theory was that since the Township was the named insured of the policy, any claim on the policy by the plaintiffs would be subject to section 8553(d). *See* Def. Reply at 3 n.1. Hartford's position ignores the fact that the plaintiffs did not have tort claim against the Township, but rather were attempting to collect on the Township's UIM policy.

Hartford is in the anomalous position of having a reasonable basis to delay resolving the claim, but relying on other, unreasonable bases. The court believes that the first prong of the *Klinger* test is an objective one: that is if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law be bad faith. *Cf. Jung*, 949 F.Supp. at 359 (stating that if the insurer's reliance on an incorrect interpretation of the law was reasonable, bad faith cannot be found even if its analysis of the law was wrong); *Hyde Athletic Indus. v. Continental Cas. Co.*, 969 F.Supp. 289, 307 (E.D.Pa.1997) (holding that an insurer's aggressive defense its interest is not bad faith, nor does it act in bad faith by investigating and litigating "legitimate issues of coverage"). While Hartford may have recklessly disregarded *its* lack of a reasonable basis regarding whether it was the primary insurer, there was a reasonable basis for delaying the decision because the law regarding an employee's right to claim under his employer's policy was unsettled. Thus, while Hartford may meet the second prong of the bad faith analysis, it does not meet the first prong.

As Feiner recognized when he notified West Goshen Township of the plaintiffs' claim, the Superior Court's decision in *Warner*, which had been issued just five days earlier, was crucial to their assertion of coverage under the Township's policy. *See* Pl.Ex. 35 (Dec. 18, 1996 Ltr. from Feiner to West Goshen Township). *Warner* held that an employee was not barred by the exclusivity provisions of the Workers' Compensation Act (WCA) from claiming under his or her employers' UIM motorist benefits. *See Warner*, 688 A.2d at 183. The case was appealed, and the

---

**13.** Specifically, the section provides that:

If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

42 P.S. § 8553(d).

Pennsylvania Supreme Court did not deny allocatur until July 10, 1997. *See Warner v. Continental/CNA Ins. Cos.,* 548 Pa. 660, 698 A.2d 68 (1997).

The central question in *Warner* was whether the 1993 amendments to the MVFRL and the WCA indicated an intent to bar an employee from recovering both workers' compensation benefits and his employer's UIM insurance benefits. *See Warner,* 688 A.2d at 181–183. While the Superior Court concluded that the legislature did not intend to bar recovery, the question was a close one. For example, in *Travelers Indem. Co. of Ill. v. Dibartolo,* 131 F.3d 343 (3d Cir.1997), the dissent disagreed with the majority's prediction that the Pennsylvania Supreme Court would adopt the holding of *Warner* on the basis of strong dicta of another Supreme Court case, *Ducjai v. Dennis,* 540 Pa. 103, 656 A.2d 102, 106 (1995), that stated that the amendments to the MVFRL should bar an employee's recovery of both workers' compensation and UIM benefits. *See Travelers,* 131 F.3d at 351–53 (Nygaard, C.J., dissenting). Given that reasonable minds could disagree on whether Superior Court's decision in *Warner* would be upheld by the Pennsylvania Supreme Court, there was an objectively reasonable basis for Hartford to delay resolving the plaintiffs' claim.[14]

### 3. Low and Late Settlement Offer

Hartford did not act in bad faith by refusing to make a settlement offer until just six days prior to arbitration and then only offering half of the policy limit. Refusal to settle may constitute bad faith when the amount in question is clearly known by the insurer. *See Kosierowski,* 51 F.Supp.2d at 592 (citing *Klinger,* 115 F.3d at 235). Here, as Hartford argues, the exact worth of the claim was not clear. *See* Def. Mem. at 21–22, 34. A large component of the claim involved pain and suffering, loss of life's pleasures and loss of consortium,[15] all of which reasonable minds could differ in quantifying. *See Keefe v. Prudential Property and Cas. Ins. Co.,* 203 F.3d 218, 226 (3d Cir. 2000) (citations omitted) (noting that the pain and suffering and general damages elements of a claim are inherently flexible). The only clearly objective component of plaintiffs' claim was Mr. Williams' medical expenses and past lost wages which totaled $110,355.70.[16] *See* Pl.Ex. 82 at 15. Hartford, the plaintiffs and the arbitrators all set different figures on the claim. While this differing assessment of the value of the plaintiffs' claim does not, on its own, negate a charge of bad faith, nor relieve Hartford of its responsibility of paying what was reasonably due to plaintiffs, *see Klinger,* 115 F.3d at 235, it does support Hartford's contention that the value of the plaintiffs' claim was not reasonably clear.

Plaintiffs argue that because Hartford set its reserves for this claim at $500,000 in May 1997, and contemplated raising its reserve to $1,000,000 as early as

---

**14.** That Mr. Williams was collecting at least some of his benefits under the HLA, 53 P.S. §§ 637–38, does not affect this analysis since he was also drawing workers' compensation benefits. In addition, Hartford did not learn that the HLA was applicable to this case until Mr. Williams' deposition in September 1997. *See* Pl.Ex. 1 at 58–59 (Dep. of David Williams).

**15.** While Hartford's failure to take a sworn statement from Mrs. Williams in support of her loss of consortium claim may be negligent, a reasonable jury could not find that it amounted to the reckless behavior necessary to sustain a claim of bad faith. Hartford could properly rely on the medical evidence regarding Mr. Williams' limitations to evaluate the effect on Mrs. Williams. Plaintiffs' expert report, which simply states that Hartford acted unreasonably in failing to take a statement from Mrs. Williams, does not create a genuine issue of material fact. *See Kosierowski,* 51 F.Supp.2d at 595.

**16.** While these benefits were paid by the workers' compensation carrier, there was a lien by that against any settlement Mr. Williams' obtained from Hartford. *See* Pl.Ex. 82 at 15.

October 1997, it valued the claim close to the plaintiffs' demand and therefore was unreasonable in delaying its first offer of $500,000 until April 1998. While Hartford itself concedes that the setting of reserves is an estimate of an insurer's exposure under a claim, *see* Pl.Ex. 32 at 6 (Hartford Best Practice Guide), the court is reluctant to fashion a rule requiring an insurer to make an offer reflecting the reserve as soon as it is set. Nor is the fact that Hartford considered raising its reserve, rather than actually doing so, clear and convincing evidence that it placed the value of the plaintiffs' claim at or near the policy limit.

Plaintiffs also contend that Hartford's initial offer was unreasonably low since Hartford's vocational expert set Mr. Williams' lost earning capacity at $564,000, provided that Mr. Williams did not finish law school. *See* Pl.Ex. 81 at 20 (vocational and economic assessment). However, the report also estimated that Mr. Williams' loss of earn capacity would be $116,600 if he was able to finish law school, as he indicated that he wished to do. *See id.* at 14, 20. While Hartford was aware that Mr. Williams had taken a medical leave of absence and that his own doctor was doubtful of his ability to finish school, *see* Pl.Ex. 12 at 70–72 (Dep. of Dr. Mitchell Cohen), a reasonable jury could not say that Hartford acted recklessly by relying on Mr. Williams' desire to complete his legal studies in making an initial offer that contemplated that he would ultimately receive a law degree.

Hartford's offers of $500,000 and $650,-000 were also lower than the arbitrators' ultimate award of $900,000. Nevertheless, negotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult. *See Kosierowski*, 51 F.Supp.2d at 592. Here, in light of the uncertainties regarding Mr. Williams' future earning power and the inherently subjective nature of much of the plaintiffs' damages, a reasonable jury could not find Hartford's lower valuation of the claim to be clear and convincing evidence of bad faith.

### 4. Violations of Applicable Statutes and Regulations

■ Plaintiffs' allegations that Hartford violated Pennsylvania's Unfair Insurance Practices Act (UIPA) and applicable insurance regulations do not amount to bad faith. Violations of the UIPA and its regulations may be indicative of bad faith. *See MacFarland v. United States Fidelity & Guar. Co.*, 818 F.Supp. 108, 110 (E.D.Pa. 1993); *Romano*, 646 A.2d at 1233. The plaintiffs' claims under the UIPA, which relate to allegations of delay and failure to pay the value of the claim, have been addressed by the court, as they are derivative of the bad faith claim itself.[17] Plaintiffs correctly charge Hartford with failing to comply with 31 Pa.Code §§ 146.6 and 146.7(c)(1), which required it to complete its investigation within thirty days after receiving notice of the claim or to send, within thirty days and every forty-five days thereafter, a written explanation of why the investigation has not been completed. Standing alone, this failure does not constitute clear and convincing evidence of bad faith. *See Kosierowski*, 51 F.Supp.2d at 596 (holding that the insurer's failure to send letters every forty-five days explaining why the claim had not yet been evaluated did not create a material issue of fact regarding bad faith). The record reveals that Hartford and the plaintiffs' counsel communicated regularly.

---

17. Specifically, plaintiffs claim the following violations: Hartford failed to accept or deny coverage promptly in violation of 40 P.S. § 1171.5(a)(10)(v) and failed to investigate, evaluate and pay the claim with reasonable promptness in violation of 40 P.S. § 1171.5(a)(10)(vi); Hartford did not offer the plaintiffs what they were owed under the policy and forced them to institute litigation by offering substantially less, in violation of 40 P.S. § 1171.5(a)(10)(vii).

While Hartford may have been negligent in failing to inform plaintiffs of the progress of its investigations in a manner mandated by the regulations, such negligence does not constitute bad faith.

### 5. Attitude of Hartford

Finally, plaintiffs point to Hartford's overall handling of the claim, which they allege demonstrates a strong desire by Hartford to protect its interests at the expense of plaintiffs' claim. Plaintiffs cite as examples the repeated statements of Hartford regarding its hope of "mitigating" plaintiffs' claim; *see, e.g.,* Pl.Ex. 57 (Sept. 22, 1997 E-mail from Luiz to Abel); Pl.Ex. 33, entry of Feb. 12, 1998; its preoccupation ensuring that the arbitration would held in what it viewed as the more favorable venue of Chester County; its eagerness to coordinate its investigation with the workers' compensation carrier; its contemplation of undertaking surveillance on Mr. Williams; and its interest in the results of surveillance done by the workers' compensation carrier. While an insurer is required to give the interests of its insureds the same consideration it gives its own interests, it is not required to make the interests of its insureds paramount. *See Hyde Athletic Indus.,* 969 F.Supp. at 307. Moreover, a "fiduciary duty higher than that of good faith and fair dealing does not arise out of an insurance contract until the insurer asserts a stated right under the policy to handle all claims asserted against the insured." *See Keefe,* 203 F.3d at 227. Even read in a light most favorable to plaintiffs, the record reveals the unremarkable fact that Hartford actively questioned the plaintiffs' valuation of their claim and did not wish to pay what the plaintiffs demanded. Plaintiffs' argument fails to appreciate that under the policy, Hartford was only obligated to pay what the plaintiffs were legally entitled to collect from the tortfeasor. *See* Pl.Ex. 31at 1. Hartford's position does not amount to clear and convincing evidence by which a jury could find that its handling of the plaintiffs' claim was in bad faith.

### III. Conclusion

Plaintiffs have not presented clear and convincing evidence that Hartford acted unreasonably and that it recklessly disregarded its lack of a reasonably basis in its handling of the the their claim. Because plaintiffs cannot meet their burden of proof on their bad faith claim, the court will grant Hartford's motion for summary judgment.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 22nd day of February, 2000, upon consideration of defendant's motion for summary judgment, the response thereto, and after a hearing, it is hereby **ORDERED** that the motion is **GRANTED.**

All pending motions in limine are **DENIED** as moot.